UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP COURTHOUSE

| | |
|---|---|
| Betty Bolling, individually and on behalf of all others similarly situated, | 2:22-cv-06312 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Bob's Discount Furniture, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Bob's Discount Furniture, LLC ("Defendant") markets, promotes, and sells furniture with added protection plans known as "Goof Proof."



**I.   GOOF PROOF PROMOTED AS INSURANCE TO PROTECT AGAINST HARM**

2. Defendant describes Goof Proof as "the best way to protect your investment from a wide variety of accidents for 5 years."

3. Protection against accidents is the function of insurance, even though Goof Proof is

self-described as a service contract.

4. A service contract is defined as a contract "for a separate or additional consideration, for a specific duration to perform the repair, replacement or maintenance of property, [. . .], due to a defect in materials or workmanship or wear and tear." N.Y. Ins. Law § 7902(k).

5. An example of a service contract is where an automobile manufacturer agrees to repair or replace car parts should they fail or break down within a specified period, i.e., 5 years or 50,000 miles.

6. However, Defendant's sale of furniture with added coverage only for accidental damage falls outside of a typical service contract.

7. Whether damage occurred as the result of an accident or normal use is necessarily subjective.

8. Defendant denies claims based on customer misuse, even where that misuse may have occurred unintentionally, and is unexpected or unforeseen, which is the definition of an accident.

9. The documents containing the full terms for Goof Proof do not provide information related to the distinction between customer misuse and accidental damage.

10. Goof Proof excludes coverage related to accidental damage if that damage is considered to be "general wear & tear."

11. In reality, Goof Proof does not protect the furniture purchased by Bob's customers.

12. The lengthy list of exclusions is only disclosed to consumers after purchasing Goof Proof, when they receive the full agreement by mail or email.

13. In other words, consumers see the agreement only after they purchase Goof Proof.

14. The full Goof Proof contract is riddled with exclusions.

15. The most common reason for denial of claims is because the claimant cannot identify the specific cause of the event which caused the damage.

16. In these circumstances, the denial is categorized as based on customer misuse or "wear and tear."

17. However, given that most Goof Proof claims are filed within three years of purchase, this is not enough time for the items to break down by themselves.

18. Defendant classifies rips, tears, breaks and punctures as defects, which is another exclusion.

19. Defendant regularly denies claims if a customer cannot identify the exact date within a 30-day period when a stain or damage occurred.

20. Not noticing a stain or damage on the day it occurred is a common circumstance, especially if the furniture is used by other persons within a household and not exclusively by the person who purchased Goof Proof.

21. Additionally, if there is more than one marking or puncture on the furniture, the claim can be denied on the basis that the item was "misused."

22. However, it is not expected that a customer would submit a claim for the most minor and less visible markings or tears.

23. Defendant regularly denies claims based on the issue being categorized as "accumulated [stains/tears/etc]," "frame defects," "repetitive" or "preventable."

24. Customers submit pictures of the items for which coverage is sought, and Defendant identifies other markings or rips, even in other areas of the furniture, and deny claims on this basis.

25. Defendant has not reasonably defined what types of stains, rips, etc., are "excessive" and the application of this criteria results in denial of valid claims.

## II. PLAINTIFF'S EXPERIENCE WITH GOOF PROOF

26. On February 24, 2022, Plaintiff purchased a Calvin sofa/loveseat combo for $999.00, and Goof Proof for $99.99, from Defendant's website, MyBobs.com.

 

27. In August 2022, Plaintiff submitted a claim for her Calvin sofa, because a sofa cushion had suffered an accidental tear, and was assigned claim number 1312424.

 

28. Defendant denied her claim with respect to the sofa cushion, stating that:

> The plan you purchased from the retailer shown above does cover your furniture for:
>
> - Accidental rips, cuts and punctures
>
> However, the stains/damages listed below are not coverages of your plan:
>
> - Seam separation, stress tears

4

> *Please see attached copy of your plan details*
>
> Please understand that this is a final determination and your claim cannot be changed or altered. If desired, you may have these stain(s)/damage(s) serviced by a licensed technician at your own expense. If you do have these stain(s)/damage(s) serviced, please retain a copy of the receipt. This receipt will be required to file a claim in this same location(s) in the future.

29. Defendant's denial of the claim on the sofa's cushion, because the damage was classified as a "Seam separation, stress tear," disregards that the tear resulted from an accident and should instead be classified under "Accidental rips, cuts and punctures."

30. The claim was denied on the basis that the damage caused was due to the normal or intended use of the items and not an accidental occurrence.

31. This is equivalent to a "wear and tear" exclusion in insurance policies.

32. The purpose of a wear and tear clause is to let the covered party know that the agreement will not provide coverage for things that reach their natural life span.

33. Plaintiff purchased Goof Proof believing it would provide coverage to the furniture for accidental damage and "goofs" that caused such damage, whether through her actions or failures in manufacturing.

## Jurisdiction and Venue

34. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. The aggregate amount in controversy exceeds $5 million, including sales, statutory and punitive damages, and attorney's fees, exclusive of interest and costs.

36. Plaintiff is a citizen of New York.

37. Defendant is a Massachusetts limited liability company with a principal place of business in Manchester, Hartford County, Connecticut.

38. The sole member of Defendant is BDF Acquisition Corp., a Delaware corporation with a principal place of business in Manchester, Hartford County, Connecticut.

39. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

40. The members of the class Plaintiff seeks to represent are more than 100, because Defendant sells furniture through stores and online with the representations described here, in the States covered by Plaintiff's proposed classes.

41. Venue is in this District with assignment to the Central Islip Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Suffolk County, including Plaintiff's purchase and/or use of Goof Proof, and her awareness and/or experiences of and with the issues described here.

## Parties

42. Plaintiff Betty Bolling is a citizen of Moriches, New York, Suffolk County.

43. Defendant Bob's Discount Furniture, LLC is a Massachusetts limited liability company with a principal place of business in Manchester, Connecticut, Hartford County.

44. Defendant is one of the fastest growing furniture chains in the nation.

45. However, Defendant makes most of its profits not through furniture, but through sale of Goof Proof plans.

46. Plaintiff paid more for Goof Proof than she would have paid had she known of the issues described here, and would not have purchased it or would have paid less.

## Class Allegations

47. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Delaware, Iowa, Kansas, Kentucky, Maine, Minnesota, West Virginia, and Wisconsin who purchased the Product during the statutes of limitations for each cause of action alleged.

48. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

49. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

50. Plaintiff is an adequate representative because her interests do not conflict with other members.

51. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

52. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

53. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Plaintiff bought Goof Proof because she believed it would cover accidental damage, whether caused by her actions or failures in manufacturing of the items, through repair, replacement, or maintenance.

56. Given that Defendant made representations that Goof Proof would cover accidental

7

damage when Goof Proof did not cover all accidental damage, notwithstanding the other allegations that such claims were misleading, Goof Proof and Defendant failed to provide any benefit for Plaintiff that she reasonably expected in purchasing the additional coverage.

57. Plaintiff and class members would not have purchased Goof Proof or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

58. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

59. Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

60. Goof Proof was sold as a product to insure Plaintiff's furniture against damage and loss and expressly and impliedly warranted that it would cover accidental damage, whether caused by her actions or failures in manufacturing of the items, through repair, replacement, or maintenance.

61. The Magnuson Moss Warranty Act includes specific requirements for service contracts, which Defendant violated.

62. Defendant directly marketed Goof Proof to Plaintiff and consumers through its advertisements and marketing, through various forms of media, in print circulars, direct mail, and targeted digital advertising.

63. Defendant knew Goof Proof attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

64. Defendant's representations about Goof Proof were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it would provide protection of one's purchase from accidental damage, whether caused by one's actions or failures in manufacturing of the items, through repair, replacement, or maintenance.

65. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of Goof Proof.

66. This duty is based on Defendant's outsized role in the market for discount furniture, where a purchaser is more likely to buy the added coverage because of possible doubts as to the quality of the items.

67. Plaintiff recently became aware of Defendant's breach of Goof Proof's warranties.

68. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with Goof Proof.

69. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

70. Goof Proof did not conform to its affirmations of fact and promises due to Defendant's actions.

71. Goof Proof was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact in its marketing, because it was marketed as if it would provide protection of one's purchase from accidental damage, whether caused by one's actions or failures in manufacturing of the items, through repair, replacement, or maintenance.

72. Goof Proof was not merchantable because Defendant had reason to know the particular purpose for which Goof Proof was bought by Plaintiff, because she expected it would provide protection of one's purchase from accidental damage, whether caused by one's actions or failures in manufacturing of the items, through repair, replacement, or maintenance, and she relied on Defendant's skill and judgment to select or furnish such a suitable Goof Proof.

73. Plaintiff would not have purchased Goof Proof or paid as much if the true facts had been known, suffering damages.

Bad Faith Insurance Denial

74. Insurance is defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.

75. Goof Proof purported to cover damages caused by fortuitous events, which constitutes insurance.

76. By purchasing Goof Proof, Plaintiff was protecting her purchase – or investment – against future accidents.

77. Defendant breached the implied covenant of good faith and fair dealing by withholding benefits under Goof Proof without cause.

78. This is because the terms of Goof Proof allowed Defendant to exclude any claim based on a nebulous distinction between customer misuse and accidental damage.

79. Defendant's records, and those of its agents, advise its adjustors to deny claims based on customer misuse, even where they identify an accidental occurrence.

80. In so doing, Defendant frustrated the purpose of the Goof Proof policy, to the detriment of Plaintiff.

81. There was no genuine dispute as to Plaintiff's coverage under Goof Proof because

Defendant universally and unreasonably, with minimal to no investigation, concluded that accidents were distinct from customer misuse.

### Fraud

82. Defendant misrepresented and/or omitted the attributes and qualities of Goof Proof, that it would provide protection of one's purchase from accidental damage, whether caused by one's actions or failures in manufacturing of the items, through repair, replacement, or maintenance.

83. The records Defendant is required to maintain, the information inconspicuously disclosed to consumers, and its internal surveys, provided it with actual and constructive knowledge of the falsity and deception.

### Unjust Enrichment

84. Defendant obtained benefits and monies because Goof Proof was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages, interest, and restitution;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   October 19, 2022

Respectfully submitted,

/s/ Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com