UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETTY BOLLING, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC,<br><br>Defendant. | Docket No. 1:22-cv-06312 (LDH)<br><br>Leave to file granted on April 4, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY</u>[1]**

---

[1] The Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and Stay served upon opposing counsel omitted a table of contents and table of authorities. For the Court's convenience, the following pages i-iv have been appended prior to filing with opposing counsel's consent.

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| BACKGROUND AND ALLEGATIONS | | 2 |
| A. | Plaintiff Betty Bolling | 2 |
| B. | The Agreements to Arbitrate | 4 |
| ARGUMENT | | 6 |
| I. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS | | 7 |
| A. | Standard of Review, Governing Law, and Burden of Proof. | 7 |
| B. | This Dispute Falls Within The Scope of Both Arbitration Provisions. | 8 |
| C. | Plaintiff Assented To The Agreements By Accepting The Benefits of The Transaction and Then She Ratified Them By Suing Seeking Enforcement. | 8 |
| D. | The Arbitration Provision Contained In The Goof Proof Contract Can Be Enforced By BDF, Even Though It Runs To Guardian. | 11 |
| E. | Class Action Waivers Must Be Enforced Whenever Included In a Valid Arbitration Provision. | 12 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                            **Pages**

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)...............................................................................................8

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006)...............................................................................................7

*Beautyko, LLC v. FedEx Ground Package Sys., Inc.*,
    No. 14-CV- 0037 RA, 2015 WL 224361 (S.D.N.Y. Jan. 16, 2015).........................................9

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002)...............................................................................................7

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
    9 F.3d 1060 (2d Cir. 1993).................................................................................................9

*DuBois v. Macy's E. Inc.*,
    338 F. App'x 32 (2d Cir. 2009)..........................................................................................7

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).......................................................................................................4, 7

*Glover v. Bob's Disc. Furniture, LLC*,
    No. 20-CV-10924 (JGK), 2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022)...........................1, 10

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
    6 N.Y.3d 371 (2006) .....................................................................................................9, 10

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000).............................................................................................................8

*Hines v. Overstock.com, Inc.*,
    380 F. App'x 22 (2d Cir. 2010)..........................................................................................7

*In AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).........................................................................................................12

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015).............................................................................................13

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019).....................................................................................................12

*In re Lehman Bros. Holdings Inc.*,
    541 B.R. 551 (S.D.N.Y 2015)............................................................................................9

*McAllister v. East*,
  611 F. App'x 17 (2d Cir. 2015) ................................................................................................8

*Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*,
  641 F. Supp. 2d 196 (S.D.N.Y. 2009) ....................................................................................8

*Pettersen v. Volcano Corp.*,
  No. 18CV03021PKCPK, 2020 WL 6323937 (E.D.N.Y. Sept. 8, 2020) ................................8

*Potthoff v. Bob's Disc. Furniture, LLC*,
  No. 22-c-1722 (N.D.Ill. Aug. 19, 2022) ............................................................................1, 10

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
  991 F.2d 42 (2d Cir. 1993) .....................................................................................................8

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ............................................................................................11, 12

*Rightnour v. Tiffany & Co.*,
  239 F. Supp. 3d 744 (S.D.N.Y. 2017) ....................................................................................7

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..............................................................................................................13

*Wong v. Bob's Disc. Furniture, LLC*,
  No. 22-CV-04220 (C.D.Cal. Dec. 27, 2022) .....................................................................1, 11

**Statutes**

9 U.S.C. §§ 2, 3..............................................................................................................1, 6, 7, 12

N.Y. Ins. Law § 7903(b)(1) .............................................................................................................5

New York General Business Law §§ 349 & 350..............................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(7).....................................................................................................................2

Fed. R. Civ. P. 12(h)(2).....................................................................................................................2

Fed. R. Civ. P. 19..............................................................................................................................2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETTY BOLLING, individually and on behalf of those similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC,<br><br> Defendant. | Docket No. 1:22-cv-06312 (LDH)<br><br>Leave to file granted on April 4, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY</u>**

 Defendant Bob's Discount Furniture, LLC ("BDF") respectfully submits this Memorandum of Law in support of its Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (the "FAA"). Plaintiff Betty Bolling ("Plaintiff") agreed to arbitrate this dispute on an individual (i.e., non-class action) basis under the auspices of the American Arbitration Association ("AAA"). Accordingly, the FAA requires that: (1) Plaintiff be ordered to proceed with individual arbitration and (2) this case be stayed pending the outcome of that arbitration. 9 U.S.C. § 3.

 This is the fourth in a series of materially identical lawsuits filed against BDF by Plaintiff's counsel. Each of the three prior cases was compelled into individual arbitration. *Glover v. Bob's Disc. Furniture, LLC*, No. 20-CV-10924 (JGK), 2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022); *Potthoff v. Bob's Disc. Furniture, LLC*, No. 22-c-1722 (N.D.Ill. Aug. 19, 2022); *Wong v. Bob's Disc. Furniture, LLC*, No. 22-CV-04220 (C.D.Cal. Dec. 27, 2022). This Court should reach the same result for the reasons set forth below.

# BACKGROUND AND ALLEGATIONS

This putative consumer class action concerns Goof Proof service contracts that BDF sells, non-party Guardian Protection Products, Inc. ("Guardian") administers, and a non-party insurance company underwrites. *See* accompanying Declaration of Dean Lotufo (the "Lotufo Dec."), ¶ 5.[1] These contracts provide consumers with coverage for many kinds of accidental damage to their furniture. *See* Plaintiff's Goof Proof Contract attached as <u>Exhibit A</u>.

### A.   Plaintiff Betty Bolling.

Plaintiff's Complaint ("Complaint") alleges that she purchased a Goof Proof contract on February 24, 2022 when buying a sofa and loveseat from BDF. Dkt. 1, ¶ 26. At some unspecified time thereafter, a seam on one of the sofa cushions separated, leaving what appears to be a roughly two-inch opening. *Id.*, ¶ 27.

While the Complaint categorizes this as an "accidental tear," it fails to describe any accident that allegedly caused the "tear." Instead, it strains to redefine the term "accidental damage" to include "failures in manufacturing." *Id.*, ¶ 33 ("Plaintiff purchased Goof Proof believing it would cover accidental damage and 'goofs' that causes such damage, whether through her actions <u>or failures in manufacturing.</u>") (emphasis added); ¶¶ 55, 60, 64, 71, 72, 82 (same).

There is, however, a well-recognized distinction between accidental damage coverage and product defect coverage. If you call your auto insurer complaining of transmission trouble arguing that there must have been an "accident" *in the manufacturing process*, your auto insurer

---

[1] BDF reserves the right to seek dismissal pursuant to Fed. R. Civ. 12(b)(7) and 19 for failure to join necessary and indispensable parties. *See* Fed. R. Civ. P. 12(h)(2) (a defendant need not raise failure to join necessary and indispensable parties in a motion to dismiss, but may elect to preserve the defense and raise it in a subsequent motion).

will undoubtedly deny your claim. Instead, of course, you should contact the manufacturer or dealer to make a product defect claim, assuming that your car is still under warranty.

That is just what happened here. Plaintiff made a product defect claim under a service contract that covered accidental damage, but not product defects. She contacted Guardian, the administrator of her Goof Proof plan, and complained about the seam separation. *Id*., ¶ 27.[2] Guardian correctly responded that Goof Proof <u>does</u> provide coverage for "[a]ccidental rips, cuts and punctures," but it <u>does not</u> cover manufacturing defects, including "seam separation." *Id*. Guardian thus properly denied Plaintiff's Goof Proof claim in August 2022 because she did not identify any covered accident that damaged her sofa. *Id*. ¶¶ 27-29.

Importantly, the sofa was still covered by BDF's product defect warranty in August 2022. *Id*., ¶ 26; *see also* Plaintiff's Sales Receipt attached as <u>Exhibit B</u> (the "Sales Receipt").[3] Plaintiff could have simply made a warranty claim to BDF, but she failed to do so. As the Sales Receipt e-mailed to her at the time of purchase explained,

- All furniture that is purchased at our regular price is guaranteed to be free from factory defects for 1 year… **Call Bob's** Customer Support Department at (860) 474-1000 **to report a factory defect**…

- Goof Proof serviced by **Guardian** covers you for 5 full years from all stains and most **accidental** and unexpected damages that occur from a single incident… **Call Guardian at (800) 538-9500 to report the incident** to your furniture.

Ex. B (emphasis added).

In addition to providing her with the instructions above, BDF's pre-motion conference letter concerning the instant Motion explained that Plaintiff's sofa was still covered by BDF's

---

[2] While Guardian is not mentioned by name, the Complaint not allege that Plaintiff made a claim to BDF and it quotes from Guardian's response to her claim. Dkt. 1, ¶ 28. Guardian's response refers to BDF in the third person as "the retailer," showing that plaintiff was not communicating with BDF, but with Guardian, which administers all Goof Proof contracts. *Id.*
[3] Citations to "Exhibit" or "Ex" refer to the documents attached to the Lotufo Dec.

product defect warranty and that she need only make a claim to BDF to receive service for her seam separation. Dkt. 8, p. 2 ("Plaintiff's sofa was, and remains, covered by the one-year product defect warranty that protects new furniture sold by BDF. Until the anniversary of its delivery on March 5, 2023, she may simply make a warranty claim to BDF that will be gladly honored.") Plaintiff still made no claim to BDF. Lotufo Dec., ¶ 13.

Thus, Plaintiff is effectively faulting BDF for not honoring a claim that she never made. *See generally* Dkt. 1, ¶ 27 (alleging that Plaintiff made a Goof Proof claim to an unnamed entity, not BDF). In fact, Plaintiff did nothing to alert BDF to the alleged seam separation before filing this lawsuit and she has persistently refused to make a warranty claim since then. Lotufo Dec., ¶ 13. Nonetheless, her Complaint asserts boilerplate counts alleging that BDF somehow violated New York General Business Law ("GBL") §§ 349 & 350, breached express and implied warranties, engaged in bad faith insurance denial, committed fraud, and was unjustly enriched.

Despite the apparent flaws in her own case, Plaintiff seeks to represent a class of "New York residents who purchased the [Goof Proof] Product during the statute of limitations period of each cause of action alleged." *Id*., ¶ 110. She further seeks to represent a separate class of all those in Delaware, Iowa, Kansas, Kentucky, Maine, Minnesota, West Virginia and Wisconsin who purchased Goof Proof contracts.

### B. The Agreements to Arbitrate.

Ms. Bolling agreed to arbitrate this dispute through two separate agreements.

First, before completing her on-line furniture purchase, Plaintiff was presented with the option to buy a Goof Proof service contract covering accidental damage and provided her with a summary of what would, and would not, be covered. Lotufo Dec., ¶ 9. This summary specifically

4

stated that "seam separation" would not be covered. *Id.* It also included a hyperlink to the full terms of the Goof Proof Contract, which prominently states:

> **ARBITRATION**
>
> **If We cannot resolve any disputes with You related to the Plan, including claims, YOU AND WE AGREE TO RESOLVE THOSE DISPUTES THROUGH BINDING ARBITRATION OR SMALL CLAIMS COURT INSTEAD OF THROUGH COURTS OF GENERAL JURISDICTION. FURTHER, YOU AND WE AGREE TO WAIVE OUR RIGHTS TO A TRIAL BY JURY AND NOT PARTICIPATE IN ANY CLASS ARBITRATIONS OR CLASS ACTIONS….**

*Id.,* Ex. A, p. 3 (the "Goof Proof Contract") (bolding and capitalization in original).[4] In addition to this on-line disclosure prior to purchase, a copy of the Goof Proof Contract was sent to Plaintiff via email shortly after her purchase in accordance with N.Y. Ins. Law § 7903(b)(1). Lotufo Dec., ¶ 10. Plaintiff was then given the option to terminate her Goof Proof Contract and receive a full refund within 30 days. Ex. A, p. 3 ("This Plan may be canceled by You . . . within thirty (30) days of the receipt of this Plan . . . You shall receive a full refund of the price paid…."). Plaintiff did not exercise her right to terminate.[5] Lotufo Dec., ¶ 14; *see generally*, Complaint.

Second, immediately after she placed her on-line order, Plaintiff was sent an e-mail thanking her for her purchase and stating "Please find a copy of your sales order receipt attached." Lotufo Dec., ¶ 11. The accompanying PDF of her Sales Receipt contained a single page of plainly worded terms that included the following:

---

[4] Notably, the Goof Proof Contract begins with the following statement: ""ARE YOU STILL UNDER YOUR MANUFACTURERS/STORE WARRANTY? Check Your manufacturer/store warranty to see if You are still covered. You can call Your Retailer for a copy, and they will assist You if You are covered. This Plan does not cover any condition that should be covered by Your manufacturer/store warranty or any other warranty." Ex. A.
[5] While BDF is not a party to the Goof Proof Contract, it may nonetheless compel arbitration on estoppel grounds as explained at pp. 11-12, *infra*.

> **RESOLUTION OF DISPUTES**
> **Any controversy or claim between you and Bob's arising out of, or relating to, this agreement or any products or services purchased from Bob's shall be resolved by arbitration administered by the American Arbitration Association** ["AAA"] pursuant to its Consumer Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. You agree to waive your right to have a judge or jury decide your claim. **You and Bob's further agree to bring any claim on an individual basis only. Neither you nor Bob's will serve as a class representative, join as a class member, or otherwise participate as a plaintiff in any class, mass, consolidated, or private attorney general action or arbitration.**

Exhibit B, p. 3 (underlining and capitalization in original, bolding added). Notably, the Sales Receipt also states "You may cancel your order for a full refund at any time up until the day of delivery or pickup." *Id*. Plaintiff did not cancel. Ex. B; *see generally*, Complaint.

In addition, Plaintiff made prior purchases from BDF on June 7, 2018 and March 7, 2020 and, on both occasions, she was sent a sales receipt containing both an arbitration provision and class action waiver. Lotufo Dec., ¶ 12, June 3, 2018 Sales Receipt attached as Exhibit C; March 7, 2020 Sales Receipt attached as Exhibit D. Although no more was required, these receipts provided Plaintiff with yet more notice that BDF requires arbitration as a condition of sale. Ex. C, D.

Accordingly, there can be no serious debate as to whether Plaintiff had adequate notice of the agreements to arbitrate. The arbitration provision in the Goof Proof Contract was disclosed on-line before her purchase and again by e-mail after her purchase. Lotufo Dec., ¶¶ 9-10; Ex. A. The arbitration provision in the Sale Receipt was e-mailed to her. Lotufo Dec., ¶ 11; Ex. B. She also received sales receipts from BDF containing arbitration provisions on two prior occasions. Lotufo Dec., ¶ 12; Ex. C, D. After all of these disclosures, Plaintiff was given an opportunity to

cancel the transaction for a full refund. Ex. A, B. Having failed to do so, she ratified the terms of the Goof Proof Contract and Sales Receipt as explained below.

## ARGUMENT

The FAA requires that Plaintiff be compelled to arbitrate her claims on an individual basis. This case should be stayed pending the outcome of that arbitration.

## I. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS.

### A. STANDARD OF REVIEW, GOVERNING LAW, AND BURDEN OF PROOF.

"[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation omitted). Under the terms of the FAA, courts "shall" compel arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. An agreement to arbitrate is presumptively "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Arbitration clauses are a matter of contract law and, if valid, should be enforced." *DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009) (summary order). "[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). Thus, "[w]hen deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 749-50 (S.D.N.Y. 2017).

The party moving to compel arbitration has the initial burden of showing that the parties formed an agreement to arbitrate. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir.

7

2010). The agreement to arbitrate must be proved by a preponderance of the evidence. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent, and intent to be bound*." Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (quotation marks omitted). Mutual assent need not be signified in writing; "[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Id.*

### B. THIS DISPUTE FALLS WITHIN THE SCOPE OF BOTH ARBITRATION PROVISIONS.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). The Sales Receipt requires arbitration of "[a]ny controversy or claim between you and Bob's arising out of, or relating to, this agreement or any products or services purchased from Bob's." Ex. B, p. 3. The Goof Proof Contract broadly requires arbitration of all claims "relating" to it. Ex. A, p. 3. This lawsuit asserts that the Goof Proof Contract Plaintiff purchased from BDF should have covered her seam separation. *See generally* Dkt. 1. Accordingly, it falls squarely within the scope of both agreements.

### C. PLAINTIFF ASSENTED TO THE AGREEMENTS BY ACCEPTING THE BENEFITS OF THE TRANSACTION AND THEN SHE RATIFIED THEM BY SUING SEEKING ENFORCEMENT.

"[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature." *McAllister v. East*, 611 F. App'x 17, 19 (2d Cir. 2015); *Pettersen v. Volcano Corp.*, No. 18CV03021PKCPK, 2020 WL 6323937, at *5 (E.D.N.Y. Sept. 8, 2020), *report and recommendation adopted*, No. 18CV3021PKCPK, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020); *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 641 F. Supp. 2d 196, 204–

08 (S.D.N.Y. 2009) (collecting cases). "New York courts have long held … that a valid arbitration agreement only requires proof that the parties intended to be bound by such an agreement. Indeed, even if the Agreement had not been signed by *either* party, the Court could still find that a valid arbitration agreement exists." *Beautyko, LLC v. FedEx Ground Package Sys., Inc.*, No. 14-CV- 0037 RA, 2015 WL 224361, at *3 (S.D.N.Y. Jan. 16, 2015) (emphasis in original) (internal citation omitted); *see also God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 373 (2006) ("we reiterate our long-standing rule that an arbitration clause in a written agreement is enforceable even if the agreement is not signed, where it is evident that the parties intended to be bound by the contract.")

A party can evidence its intent to be bound by a contract in many ways, including through ratification. A party "ratif[ies] a contract by intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it." *In re Lehman Bros. Holdings Inc.*, 541 B.R. 551, 572 (S.D.N.Y. 2015). "Where a party 'does not promptly repudiate [a] contract … he will be deemed to have ratified it.'" *Id*. (quoting *VKK Corp. f. Nat'l Football League,* 244 F.3d 114, 122 (2d Cir. 2001)). Here, Plaintiff first assented to both agreements and then she ratified them.

Plaintiff manifested her assent to the Agreements by "remain[ing] silent or acquiesce[ing] in the contract for a period of time after [s]he ha[d] the opportunity to avoid it." *Id*. As explained at pp., 5-7, *supra*, both the Goof Proof Contract and the Sales Receipt allowed Plaintiff to cancel the transaction for a full refund if she did not wish to agree to the their terms. *See* Ex. A, B. Instead, she opted to retain the benefits of the transaction: furniture and coverage for accidental damage to that furniture. Lotufo Dec., ¶ 14. Having done so, Plaintiff manifested assent to both

9

agreements. She should be held to the terms of the bargain. *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063–64 (2d Cir. 1993) (finding that, even though unsigned, arbitration provision was enforceable where plaintiff knowingly accepted the benefits of the agreement, and thus "was estopped from denying its obligation to arbitrate").

In addition, Plaintiff ratified the contracts by seeking to enforce them. She began by making a claim to Guardian under the Goof Proof Contract. Dkt. 1, ¶¶ 26-27. Then, she filed this lawsuit alleging that BDF somehow breached its express warranty and engaged in bad faith insurance denial, claims that are premised on the Sales Receipt and Goof Proof Contract, respectively. *Id.*, ¶¶ 60-81. Under New York law, a party cannot deny that an agreement was formed while seeking to enforce that agreement. *God's Battalion*, 6 N.Y.3d at 373-74 ("[plaintiff's] complaint alleges that [defendant] breached their agreement, thereby acknowledging and relying on the very agreement that contains the arbitration clause it seeks to disclaim… [a party] may not pick and choose which provisions suit its purposes, disclaiming part of a contract while alleging breach of the rest.").

In light of her acceptance and ratification, Plaintiff cannot argue that the arbitration provision in the Sales Receipt is unenforceable because it was e-mailed to her she after she completed her on-line transaction. E-mailing a receipt mirrors the familiar practice in the physical world where consumers are routinely handed paper receipts with enforceable contractual terms after they complete their purchase. In fact, three federal courts have already enforced arbitration provisions contained in BDF's paper sales receipts in materially identical lawsuits that Plaintiff's counsel filed against BDF, even though the receipts were given to consumers after they paid for their furniture. *Glover v. Bob's Disc. Furniture, LLC*, No. 20-CV-10924 (JGK), 2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022); *Potthoff v. Bob's Disc. Furniture,*

*LLC*, No. 22-c-1722 (N.D.Ill. Aug. 19, 2022); *Wong v. Bob's Disc. Furniture, LLC*, No. 22-CV-04220 (C.D.Cal. Dec. 27, 2022). In addition, Plaintiff made prior purchases on June 7, 2018 and March 7, 2020 that put her on prior notice that BDF required the arbitration of disputes as a condition of sale.

In any event, Plaintiff was unquestionably on inquiry notice of the full terms of the Goof Proof Contract, including its arbitration provision and class action waiver, before making her purchase on-line (*see* pp. 4-7, *supra*). Those terms, including an arbitration provision and class-action waiver, were presented on the BDF website through a hyperlink on the Goof Proof summary sheet. The Goof Proof Contract independently requires arbitration of this dispute for the reasons set forth in the following section.

### D. THE ARBITRATION PROVISION CONTAINED IN THE GOOF PROOF CONTRACT CAN BE ENFORCED BY BDF, EVEN THOUGH IT RUNS TO GUARDIAN.

Although on its face the Goof Proof Contract runs between Plaintiff and non-party Guardian, BDF may nonetheless may compel arbitration of Plaintiffs' claims on estoppel grounds.

Under settled law, a party to an arbitration agreement is estopped from refusing to arbitrate against a non-party to that agreement where the (1) issues the party is seeking to resolve are "intertwined with the [arbitration] agreement;" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (internal quotation omitted).

Plaintiff's claims revolve around a core contention: there is allegedly something so wrong with Goof Proof service contracts that BDF violates the law simply by selling them. *See generally*, Dkt. 1. In fact, the putative classes are defined as all those who purchased Goof Proof

11

contracts from BDF, suggesting that an alleged injury supposedly occurs each time a Goof Proof contract is sold. Dkt. 1, ¶ 47. Accordingly Plaintiff's claims are not just "intertwined with" the Goof Proof Contract, they are squarely premised upon it.

The relationship between Bob's and Guardian satisfies the "close relationship" prong. A quintessential example of a qualifying close relationship is where the plaintiff alleges "'substantially interdependent and concerted misconduct' by the signatory and non-signatory defendants." *Ragone*, 2008 WL 4058480, at *9 (quoting *Penney v. BDO Seidman, L.L.P.,* 412 F.3d 58, 70 (2d Cir.2005)); *see also Meridian Autonomous Inc.*, 2020 WL 496078, at *2 ("Pleading concerted action between a non-signatory … and a signatory … is evidence that claims between the parties are intertwined."). Here, the Complaint alleges that Goof Proof claims are mishandled, so it necessarily expressly implicates Guardian, the entity that administers all Goof Proof claims. Dkt. 1, ¶¶ 11-23; Lotufo Dec., ¶ 5.

Accordingly, the Goof Proof Contract provides a second, independent grounds for compelling arbitration.

### E. CLASS ACTION WAIVERS MUST BE ENFORCED WHENEVER INCLUDED IN A VALID ARBITRATION PROVISION.

Both the Goof Proof Contract and the Sales Receipt contain a class-action waiver provision in which Plaintiff agreed to pursue her claims on an individual basis only. Ex. A, B. This waiver must be enforced if the underlying agreements are enforced. *In AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011), the Supreme Court held that the FAA preempts any state law that prohibits enforceability of an arbitration agreement containing class action waivers, reasoning that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."

Indeed, the Supreme Court went on to explain that class arbitration cannot be compelled even where an arbitration agreement is silent or ambiguous as to the arbitrability of class or collective claims. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418–19 (2019); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). After *Lamps Plus*, the only way class arbitration can be ordered is if parties enter into agreements specifically opting-into class arbitration. Here, in contrast, the parties have specifically opted-out of class arbitration.

For all of the reasons explained above, the Court should compel the individual arbitration of Plaintiff's claims and stay this proceeding pending its outcome. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

## CONCLUSION

Defendant Bob's Discount Furniture, LLC respectfully requests that this Honorable Court enter an order compelling Plaintiff to arbitration her claims on an individual basis and staying this action pending the outcome of that arbitration.

Respectfully submitted,

**DEFENDANT BOB'S DISCOUNT FURNITURE, LLC,**

By its counsel,

 */s/ Duvol M. Thompson*
Duvol M. Thompson
HOLLAND & KNIGHT LLP
31 West 52nd Street
12th Floor
New York, NY 10019
*duvol.thompson@hklaw.com*
212-513-3200

Robert M. Shaw*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
*robert.shaw@hklaw.com*
617-203-2018

*Motion for admission pro hac vice forthcoming

DATED: July 5, 2023

**CERTIFICATE OF SERVICE**

The undersigned certifies that today, the 5th day of July 2023, he caused a true copy of the foregoing to be served on counsel for the plaintiff by e-mail addressed as follows: *spencer@spencersheehan.com*, *thillebrand@spencersheehan.com*.

 */s/ Robert M Shaw*
Robert M. Shaw