## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
## BROOKLYN COURTHOUSE

Betty Bolling, individually and on behalf of all
others similarly situated,

                    Plaintiff,

          - against -

Bob's Discount Furniture, L.L.C.,

                    Defendant

2:22-cv-06312-LDH-JMW

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Compel Arbitration

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 1

LEGAL STANDARDS ...................................................................................................... 2

ARGUMENT ..................................................................................................................... 3

I.  THE ARBITRATION AGREEMENT IS NOT VALID ............................................. 3

    A.  Defendant Cannot Show Agreement to Arbitrate .................................................. 4

    B.  Classification of Defendant's Purported Agreement ............................................. 4

    C.  Plaintiff Was Not Put on Notice of the Terms ...................................................... 5

    D.  "Incorporation By Reference" Doctrine Excludes Arbitration
        Agreement ............................................................................................................. 10

II.  UNCONSCIONABILITY BARS COMPELLING ARBITRATION ............................ 11

    A.  Circumstances Surrounding Formation of the Agreement Render it
        Procedurally Unconscionable ................................................................................ 11

    B.  Evidentiary Hearing is Necessary to Determine Whether Defendant's
        "Terms" were Substantively Unconscionable ....................................................... 12

III.  ISSUE OF ARBITRABILITY SHOULD BE DECIDED BY THE COURT ................. 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Abram Landau Real Est. v. Bevona*,
    123 F.3d 69 (2d Cir. 1997) ................................................................................ 4

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006) .............................................................................. 5

*Arnaud v. Doctor's Assocs. Inc.*,
    821 Fed. Appx. 54 (2d Cir. 2020) .................................................................... 12

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .......................................................................................... 4

*AT&T Techs. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .................................................................................... 2, 17

*Beautyko, LLC v. FedEx-Ground Package Sys., Inc.*,
    No. 14-cv-0037, 2015 WL 224631 (S.D.N.Y. Jan. 16, 2015) ........................... 10

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002) .............................................................................. 4

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003) .............................................................................. 3

*Boelter v. Advance Mag. Publishers Inc.*,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016) ............................................................... 9

*Brennan v. Bally Total Fitness*,
    198 F. Supp. 2d 377 (S.D.N.Y. 2002) ....................................................... 14, 15

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) ........................................................................................ 10

*Chimart Assoc. v. Paul*,
    489 N.E.2d 231 (N.Y. 1986) ............................................................................. 4

*D'Antuono v. Serv. Rd. Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011) .............................................................. 15

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
    9 F.3d 1060 (2d Cir. 1993) .............................................................................. 11

*Desiderio v. Nat. Ass'n of Sec. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ............................................................................ 14

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)..................................................................................................... 17

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)......................................................................... 10

*Glover v. Bob's Discount Furniture, LLC*,
    No. 20-cv-10924, 2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022)........................... 9

*Harrington v. Atl. Sounding Co.*,
    602 F.3d 113 (2d Cir. 2010)....................................................................................... 15

*In re Lehman Bros. Holdings Inc.*,
    541 B.R. 551 (S.D.N.Y. 2015).................................................................................... 11

*Klos v. Polskie Linie Lotnicze*,
    133 F.3d 164 (2d Cir. 1997)....................................................................................... 14

*Mehler v. Terminix Int'l Co. L.P.*,
    205 F. 3d 44 (2d Cir. 2000).......................................................................................... 3

*Meyer v. Kalanick*,
    200 F. Supp. 3d 408 (S.D.N.Y. 2016)......................................................................... 9

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)................................................................................... 6, 7, 8

*MHR Cap. Partners LP v. Presstek, Inc.*,
    12 N.Y.3d 640 (2009) .................................................................................................. 3

*Mulvaney Mech., Inc. v. Sheet Metal Workers*,
    351 F. 3d 43 (2d Cir. 2003)........................................................................................ 17

*Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*,
    203 F. Supp. 3d 312 (S.D.N.Y. 2016).................................................................. 12, 13

*Naylor v. Valicenti*,
    No. 20-cv-6397, 2020 WL 6557666 (W.D.N.Y. Nov. 9, 2020) ............................... 2

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016).............................................................................. passim

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996)....................................................................................... 13

*Pippis v. Pippis*,
    892 N.Y.S. 2d 771 (2010) .......................................................................................... 16

iv

*Ragone v. Atl. Video at Manhattan Ctr.*,
 595 F.3d 115 (2d Cir. 2010).............................................................. 13, 15

*Register.com, Inc. v. Verio, Inc.*,
 356 F.3d 393 (2d Cir. 2004).............................................................. 11

*Rent-A-Ctr., W., Inc. v. Jackson*,
 561 U.S. 63 (2010)............................................................................. 17

*Revson v. Cinque & Cinque, P.C.*,
 221 F.3d 59 (2d Cir. 2000)................................................................ 3

*Rightnour v. Tiffany & Co.*,
 239 F. Supp. 3d 744 (S.D.N.Y. 2017)............................................... 3

*Schnabel v. Trilegiant Corp.*,
 697 F.3d 110 (2d Cir. 2012).............................................................. 12

*Simar Holding Corp. v. GSC*,
 928 N.Y.S. 2d 592 (2011)................................................................. 16

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
 999 F.3d 828 (2d Cir. 2021).............................................................. 6, 7

*Specht v. Netscape Commc'ns Corp.*,
 306 F.3d 17 (2d Cir. 2002)................................................................ 7, 8

*Starke v. SquareTrade, Inc.*,
 913 F.3d 279 (2d Cir. 2019).............................................................. 5, 7, 12

*State v. Wolowitz*,
 468 N.Y.S.2d 131 (1983).................................................................. 16

*Thorne v. Square, Inc.*,
 No. 20-cv-5119, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022) ........... 5, 10

**Statutes**

9 U.S.C. § 4......................................................................................... 2, 3

N.Y. Gen. Bus. Law § 349................................................................. 1

N.Y. Gen. Bus. Law § 350................................................................. 1

## INTRODUCTION

Plaintiff Betty Bolling ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Defendant Bob's Discount Furniture ("Defendant") to Compel Arbitration of the allegations in the Complaint ("Compl."). ECF No. 1.

Plaintiff brings claims for damages for violations of the New York General Business Law ("GBL") §§ 349 & 350, Compl. ¶¶ 54-57, breaches of express warranty, Compl. ¶¶ 60-73, bad faith insurance denial, Compl. ¶¶ 74-81, and common law claims, Compl. ¶¶ 82-84, on behalf of a class of individuals who purchased Defendant's furniture with added protection plans known as "Goof Proof" (the "Service"). Compl. ¶ 1.[1] Plaintiff seeks monetary relief, expenses, and reasonable attorneys' fees. Compl. at 10, Prayer for Relief, ¶¶ 2-4.

Defendant argues that Plaintiff's claims must be compelled to arbitration because she purportedly agreed to arbitrate this dispute through two separate agreements. *See* Memorandum of Law in Support of its Motion to Compel Arbitration and Dismiss ("Def. Mem.") at 4-5.[2] For the foregoing reasons, Defendant's Motion should be denied.

## FACTUAL BACKGROUND

Defendant "markets, promotes, and sells furniture with added protection plans known as 'Goof Proof." Compl. ¶ 1. While Defendant describes this service as "the best way to protect your investment from a wide variety of accidents for 5 years," its "sale of furniture with added coverage only for accidental damage falls outside of a typical service contract." Compl. ¶¶ 2, 6. Accordingly, "Defendant denies claims based on customer misuse, even where that misuse may have occurred

---

[1] Plaintiff withdraws her claims for breaches of the Implied Warranty of Merchantability/Fitness for a Particular Purpose and the Magnuson Moss Warranty Act, and her claims on behalf of the Consumer Fraud Multi-State Class.

[2] In support of its Motion, Defendant submitted the Declaration of Dean Lotufo ("Lotufo Decl."), a copy of the Goof Proof service contract purchased by Plaintiff during the transaction, Ex. A, a copy of the sales receipt that Defendant e-mailed to Plaintiff following the transaction, Ex. B, and copies of the sales receipts for Plaintiff's purchases dated June 3, 2018 and March 7, 2020, respectively, Exs. C and D.

unintentionally, and is unexpected or unforeseen, which is the definition of an accident," or "damage that is considered to be 'general wear & tear,'" essentially meaning that it "does not protect the furniture purchased by [its] customers." Compl. ¶¶ 8, 10-11.

Plaintiff "purchased Goof Proof believing it would provide coverage to the furniture for accidental damage and 'goofs' that caused such damage, whether through her actions or failures in manufacturing." Compl. ¶ 33. As a result of Defendant's misleading marketing of the Service, Plaintiff "paid more for Goof Proof than she would have paid had she known of the issues described here, [or] would not have purchased it or would have paid less." Compl. ¶ 46.

## LEGAL STANDARDS

Notwithstanding the strong national policy favoring arbitration evinced by Congress's enactment of the Federal Arbitration Act ("FAA"), "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Naylor v. Valicenti*, No. 20-cv-6397, 2020 WL 6557666, at *2 (W.D.N.Y. Nov. 9, 2020) citing *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); 9 U.S.C. § 4.

In the context of motions to compel arbitration brought under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment," meaning that "if there is an issue of fact as to the making of the agreement," then trial is necessary. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); 9 U.S.C. § 4.

In deciding a motion to compel arbitration, "the court must draw all reasonable inferences in favor of the non-moving party," and "generally apply state-law principles that govern the formation of contracts." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *Mehler v. Terminix Int'l Co. L.P.*, 205 F. 3d 44, 48 (2d Cir. 2000).

Under New York law, it is well settled that "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit, and

unequivocal agreement to arbitrate." *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 750 (S.D.N.Y. 2017).

The "threshold question" in a dispute over the meaning of a contract "is whether the contract terms are ambiguous," because an unambiguous agreement "must be enforced according to the plain meaning of its terms." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000); *MHR Cap. Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009).

However, if the terms are "reasonably susceptible of more than one interpretation," then the contract is ambiguous. *Chimart Assoc. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986).

Under Second Circuit precedent, "[w]hen parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue, absent a clear and unmistakable delegation of that authority to an arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) citing *Abram Landau Real Est. v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997).

## ARGUMENT

## I.    THE ARBITRATION AGREEMENT IS NOT VALID

Defendant argues that Plaintiff "agreed to arbitrate this dispute through two separate agreements," first, through "a hyperlink to the full terms of the Goof Proof contract" containing an arbitration provision, and second, through "a sales receipt containing both an arbitration provision and class action waiver." Def. Mem. at 4-5 citing Lotufo Decl. ¶¶ 9, 11.

However, this presumes the elements of a contract exist along with the absence of "generally applicable contract defenses, such as fraud, duress, or unconscionability," which "may be applied to invalidate arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 335 (2011).

A.      Defendant Cannot Show Agreement to Arbitrate

While Defendant asserts that "[i]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied," this disregards that there was no "meeting of the minds" or "a manifestation of mutual assent," a prerequisite to establish a legally enforceable agreement. Def. Mem. at 7 citing *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

B.      Classification of Defendant's Purported Agreement

Defendant argues that "there can be no serious debate as to whether Plaintiff had adequate notice of the agreements to arbitrate" because "[t]he arbitration provision in the Good Proof Contract was disclosed on-line before her purchase and again by e-mail after her purchase." Def. Mem. at 6 citing Lotufo Decl. ¶¶ 9-10, Ex. A.

However, other courts have referred to these type of agreements as "sign-in-wrap," "[b]est described as a cross between 'clickwrap' and 'browsewrap,'" because they "do not require the user to click on a box showing acceptance of the 'terms of use' in order to continue." *Thorne v. Square, Inc.*, No. 20-cv-5119, 2022 WL 542383, at *7 (E.D.N.Y. Feb. 23, 2022) citing *Berkson*, 97 F. Supp. 3d at 394; *see also Nicosia*, 834 F. Supp. 3d at 264-67

According to the Lotufo Declaration, Plaintiff's purchase "was accompanied by a link to 'See Details' that led to a summary of what Goof Proof does, and does not cover," which "included a hyperlink reading 'See Terms & Conditions' that provided Plaintiff with access to the full text of the Goof Proof Contract, including its arbitration provision and class act waiver." Lotufo Decl. ¶ 9. Notably, Plaintiff was not required to click "See Details" before proceeding to her purchase, nor was the arbitration provision included in the "See Details" section. Plaintiff would then have

4

had to click on another hyperlink to access Defendant's "Terms & Conditions" which discretely disclosed the arbitration provision.

Additionally, "immediately following" Plaintiff's purchase, she was sent a "short cover e-mail thank[ing] her for her purchase and stat[ing] 'Please find a copy of your sales order receipt attached.'" Lotufo Decl. ¶ 11. Plaintiff, like most customers, does not pore over each receipt she is given post-purchase, and nothing about the "sales order receipt" language indicated that she may be forfeiting her right to a trial by jury.

The process described by Defendant can hardly be characterized as the type of "clickwrap" other courts have found sufficient, such as a "scroll box" which presents to a user who cannot proceed lest he or she drag the cursor to the end of the terms, as Plaintiff was never required to scroll to the arbitration provision in the Terms. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

Accordingly, regardless of the precise nature of a web-based contract, "the ultimate question concerning inquiry notice on a motion to compel arbitration remains the same – namely, whether 'the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) quoting *Meyer*, 868 F.3d at 76.

C.   Plaintiff Was Not Put on Notice of the Terms

As there are infinite ways to design a website or smartphone application, and "not all interfaces fit neatly into the clickwrap or browsewrap categories," courts will deny motions to compel arbitration where "the arbitration clause was not 'reasonably conspicuous'" or the party seeking to avoid arbitration "did not 'unambiguously manifest' intent to be bound." *Meyer*, 868 F.3d at 75; *Soliman*, 999 F.3d at 833.

Even where the offeree "does not have *actual* notice of the contract terms, she will still be bound by such terms if a 'reasonably prudent' person would be on *inquiry* notice of those terms and she unambiguously manifested assent to those terms." *Soliman*, 999 F.3d at 834 citing *Starke*, 913 F.3d at 289 (emphasis in original). An arbitration clause is not "reasonably conspicuous" "if a reasonably prudent user would not have had at the very least inquiry notice of the [arbitration clause]." *Soliman*, 999 F.3d at 833; *Berkson*, 97 F. Supp. 3d at 401.

Inquiry notice is "actual notice of circumstances sufficient to put a prudent [person] upon inquiry," which happens "if they are presented in a clear and conspicuous manner." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 n.14 (2d Cir. 2002); *Starke*, 913 F.3d at 289. Accordingly, the court here "must first determine if [Defendant's] terms of use – and by extension, the arbitration provision contained therein – were reasonably clear and conspicuous such that a reasonable person in [Plaintiff]'s shoes would have been on inquiry notice of them." *Meyer*, 868 F.3d at 74-75.

Here, Plaintiff did not "unambiguously manifest[] assent to th[e] terms" of the arbitration provision, as she never actually viewed the terms, and they were not "presented in a clear and conspicuous manner." *Meyer*, 868 F.3d at 75; *Specht*, 306 F.3d at 30.

Further, because the provision containing the arbitration clause was "buried [in] a webpage or tucked away in [an] obscure corner[]," *viz.* accessed through a hyperlink, contained in "a summary of what Goof Proof [] cover[s]," contained in yet another "See Details" hyperlink, Defendant failed to "bring[] the consumer's attention to 'material terms that would alter what a reasonable consumer would understand to be her default rights.'" *Scotti*, 97 N.Y.S. 3d at 834; *Berkson*, 97 F. Supp. 3d at 401; Lotufo Decl. ¶ 9.

It is significant to note that the design of the interface does not "brings the consumer's attention to 'material terms that would alter what a reasonable consumer would understand to be h[er] default rights when initiating an online [transaction],'" such as a mandatory arbitration provision. *Berkson*, 97 F. Supp. 3d at 401.

Where, as is the case here, "contractual terms as significant as ... the right to sue in court are accessible only via [two] small and distant hyperlink[s] ... with text about agreement thereto presented even more obscurely, there is a genuine risk that a fundamental principle of contract formation will be left in the dust: the requirement for a manifestation of mutual assent." *Scotti*, 97 N.Y.S. 3d at 834 citing *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 421 (S.D.N.Y. 2016).

Defendant correctly does not argue that Plaintiff possessed actual notice of the purported agreement, because it "never require[ed] an individual to read [] any terms of service," and "fail[ed] to obtain any form of consent from – or provide effective notice to" its customers. *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016).

In contrast to the decision by the Southern District of New York court in *Glover*, granting Defendant's motion to compel arbitration, Plaintiff did not "ratif[y] the [purported] contract by bringing a claim for breach of contract." Def. Mem. at 10 citing *Glover v. Bob's Discount Furniture, LLC*, No. 20-cv-10924, 2022 WL 3353454, at *3 (S.D.N.Y. Aug. 12, 2022).

Further, while the court in *Glover* found that the language on a similar Sale's Receipt was "sufficient to alert [Plaintiff] of the terms presented on the [last page]," other courts have decided that consumers should "be forgiven for assuming that '[Sales] Terms []' refers to a description of the types of services that [Defendant] intends to provide, not to the user's waiver of h[er] constitutional right to a jury trial or h[er] right to pursue legal redress in court." *Glover*, 2022 WL 3353454, at *3; *Kalanick*, 200 F. Supp. 3d at 421.

7

While Defendant also set forth that "Plaintiff was sent an e-mail" "immediately after she placed her on-line order," it confirms that "the Agreement had not been signed by either party," and the interface did "not require the user to click on a box showing acceptance of the 'terms of use' in order to continue," meaning that she did not "unambiguously manifest[] assent to th[e] terms." Def. Mem. at 9 citing *Beautyko, LLC v. FedEx-Ground Package Sys., Inc.*, No. 14-cv-0037, 2015 WL 224631, at *3 (S.D.N.Y. Jan. 16, 2015); *Thorne*, 2022 WL 542383, at *7.

Indeed, the simple act of mailing the "Good Proof Terms and Conditions" to Plaintiff following her purchase "does not [mean she] specifically manifest[ed] assent to the additional terms, for [she] [wa]s not specifically asked whether she agrees or to say 'I agree.'" *Nicosia*, 834 F.3d at 236. In addition, nothing about the purported disclaimer of "The information contained on the subsequent pages of this document is an integral part of the agreement between the buyer and the seller" indicates whether consumers should construe receipt and subsequent inactivity as acceptance of those terms. *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012).

Indeed, this message was "not bold, capitalized, or conspicuous in light of the whole []page," and there were "numerous other [texts] on the webpage, in several different colors, fonts, and locations, which generally obscure the message." *Nicosia*, 834 F.3d at 236 citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). As summed up perfectly by the Second Circuit court in *Nicosia*:

"[I]t is as if an apple stand visitor walks up to the shop and sees, above the basket of apples, a wall filled with signs. Some of those signs contain information necessary for her purchase, such as price, method of payment, and delivery details, and are displayed prominently in the center of the wall. Others she may quickly disregard, including advertisements for other fruit stands. Among them is a sign binding her to additional terms as a condition of her purchase. Has the apple stand owner provided reasonably conspicuous notice?

We think reasonable minds could disagree."

*Nicosia*, 834 F.3d at 236 citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).

Defendant further argues that "Plaintiff manifested her assent to the Agreements by 'remain[ing] silent of acquiesce[ing] in the contract for a period of time after [s]he ha[d] the opportunity to avoid it," since "both the Goof Proof Contract and the Sales Receipt allowed [her] to cancel the transaction for a full refund if she did not wish to agree to the their terms." Def. Mem. at 9 citing *In re Lehman Bros. Holdings Inc.*, 541 B.R. 551, 572 (S.D.N.Y. 2015) and *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063-64 (2d Cir. 1993).

However, as recognized by the court in *SquareTrade*, "providing contract terms after a transaction has taken place may be an appropriate way to contract in certain situations," but there is "little justification for it here, where it would have been virtually costless for [Defendant] to provide the governing terms and conditions to [Plaintiff] before she" purchased Goof Proof. *Starke*, 913 F.3d at 295 (finding that "a consumer viewing the [Terms and Conditions] would have reasonably believed that his contract did not contain an arbitration provision") citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 126-28 (2d Cir. 2012) (noting that there was no policy rationale for a "terms later by email" conception of contract formation under the circumstances).

Accordingly, "since the terms and conditions were not reasonably clear and conspicuous," or at the very least, "reasonable minds could disagree" about whether Defendant "put the user on inquiry notice of [its] hyperlinked terms and conditions," Plaintiff "was not on notice of the

arbitration provision" and "no arbitration agreement existed between the parties." *Arnaud v. Doctor's Assocs. Inc.*, 821 Fed. Appx. 54, 56 (2d Cir. 2020) citing *Nicosia*, 834 F.3d at 233.

D.      "Incorporation By Reference" Doctrine Excludes Arbitration Agreement

Defendant appears to argue that since Plaintiff received a "PDF of her Sales Receipt contain[ing] a single page of plainly worded terms that included" an arbitration provision, that the provision is "incorporated by reference." Def. Mem. at 5 citing Lotufo Decl. ¶ 11.

For a document to be "incorporated by reference," New York law requires it be "clearly identified in the agreement," and that "the contract contains 'language that clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely to acknowledge that the referenced material is relevant to the contract.'" *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 321 (S.D.N.Y. 2016) quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996).

Defendant argues that "Plaintiff was presented with the option to buy a Goof Proof service contract covering accidental damage and provided her with a summary of what would, and would not, be covered," which "included a hyperlink to the full terms of the Goof Proof Contract." Def. Mem. at 4-5 citing Lotufo Decl. ¶ 9.

However, this is insufficient because it "does not specifically identify the [arbitration] agreement," which is "not even mentioned," and it "do[es] not expressly incorporate the [arbitration] agreements by reference," as "nothing in the [language] suggests that [users] agreed to abide by the terms of the underlying [] policies, much less the [arbitration] agreement." *Beelman Truck*, 203 F. Supp. 3d at 322. Accordingly, Plaintiff "cannot be compelled to arbitrate under a theory of incorporation by reference." *Beelman Truck*, 203 F. Supp. 3d at 322.

## II.     UNCONSCIONABILITY BARS COMPELLING ARBITRATION

Though Defendant argues that Plaintiff "agreed to arbitrate this dispute on an individual (i.e., non-class action) basis" "through two separate agreements," this disregards that the purported agreement "is unconscionable and, therefore, unenforceable." Def. Mem. at 1, 4; *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

A contract or arbitration provision is unconscionable "when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Desiderio v. Nat. Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999).

To avoid a contract based on a showing of unconscionability, "there must be a showing that such a contract is both procedurally and substantially unconscionable." *Gillman*, 534 N.E. 2d at 833.

### A.     Circumstances Surrounding Formation of the Agreement Render it Procedurally Unconscionable

The Lotufo Declaration explained that "it is Guardian's practice to email each purchaser a copy of their Goof Proof contract," by which she was "given the option to terminate her Goof Proof Contract and receive a full refund within 30 days." Def. Mem. at 5; Lotufo Decl. ¶ 10.

Defendant's purported agreement should be considered a "contract of adhesion," because it is a "standard-form contract[] offered by [a] large, economically powerful corporation[] to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997).

Here, all the elements of a procedurally unconscionable agreement are present. There is clear "inequality in bargaining power," "based on Defendant's outsized role in the market for

discount furniture, where a purchaser is more likely to buy the added coverage because of possible doubts as to the quality of the items." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002); Compl. ¶ 66.

The purported agreement's "take-it-or-leave-it" basis was sufficient to constitute "high pressure tactics that coerce[d] [Plaintiff's] acceptance of onerous terms [because she] lacked a meaningful choice" if she wanted to participate. *Brennan*, 198 F. Supp. 2d at 382.

Further, Second Circuit precedent directs the Court to consider Plaintiff's presumed "lack of sophistication" in legal matters, and determine whether she understood "the word 'arbitration' [or] was []familiar with h[er] legal remedies," or whether [s]he had the opportunity to "ask[] questions about [the agreement]," "take[] the [] documents home to study them," or "consult[] a lawyer." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 128 (2d Cir. 2010); *Ragone*, 595 F.3d at 120.

In fact, in the 8,878 words of the seven page long "Terms and Conditions" document, only about 290 words contained on less than one page, or roughly 3% of the content, are devoted to the arbitration and class action waiver provision. Lotufo Decl., Ex. A.

That the "agreement" was procedurally unconscionable is consistent with Second Circuit precedent, which instructs courts to consider whether the arbitration clause was "hidden in a maze of fine print," where "no effort was made to alert [Plaintiff] directly to the existence of the provision[], [and where] the parties had unequal bargaining power." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 328 (D. Conn. 2011).

B.   <u>Evidentiary Hearing is Necessary to Determine Whether Defendant's "Terms" were Substantively Unconscionable</u>

While determinations of unconscionability are normally based on a showing of both procedural and substantive unconscionability, "there have been exceptional cases where a

provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability." *Gillman*, 534 N.E. 2d at 835.

Examples of substantively unconscionable contract provisions "are virtually limitless, but include inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *Simar Holding Corp. v. GSC*, 928 N.Y.S. 2d 592, 595 (2011) citing *State v. Wolowitz*, 468 N.Y.S. 2d 131, 145 (1983).

Where there is doubt as to whether a purported agreement is unconscionable, "there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose, and effect." *Simar Holding*, 928 N.Y.S. 2d at 595.

Further, "whether the record presents an issue as to the existence of unconscionability which should not be resolved without a hearing" is an issue that should be determined in a motion for summary judgment. *Simar Holding*, 928 N.Y.S. 2d at 595 quoting *Wolowitz*, 468 N.Y.S. 2d at 146.

Accordingly, "a hearing [is] necessary to determine whether the procedures employed by [Defendant] in soliciting" Plaintiff's agreement to the Terms, "along with [Plaintiff's] lack of legal representation throughout the negotiation process, served to deprive [her] of a 'meaningful choice' in entering into the contract." *Simar Holding*, 928 N.Y.S. 2d at 595 citing *Pippis v. Pippis*, 892 N.Y.S. 2d 771, 772 (2010).

## III.   ISSUE OF ARBITRABILITY SHOULD BE DECIDED BY THE COURT

Under the FAA and New York precedent, "there is a general presumption that the issue of arbitrability should be resolved by the courts." *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *see also Mulvaney Mech., Inc. v. Sheet Metal Workers*, 351 F. 3d 43, 45 (2d Cir. 2003) (noting that "questions of arbitrability" are to be resolved by the courts).

Indeed, the issue of whether the parties agreed to arbitrate is a matter to be decided by the courts and not the arbitrators, "[u]nless the parties clearly and unmistakably provided otherwise." *AT&T Techs.*, 475 U.S. at 649. The proper inquiry is whether "there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s]." *Contec*, 398 F. 3d at 208 (emphasis in original).

Accordingly, because Plaintiff here is directly "challeng[ing] the validity of the [arbitration] provision specifically," "the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file an Amended Complaint.

Dated:        August 9, 2023

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Theodore Hillebrand
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
thillebrand@spencersheehan.com

Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

**Certificate of Service**

I certify that on August 9, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Theodore Hillebrand