UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETTY BOLLING, Individually and on behalf of those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC,<br><br>    Defendant. | Docket No. 22-06312-LDH-JMW |

**DEFENDANT'S REPLY IN SUPPORT OF
<u>MOTION TO COMPEL ARBITRATION AND STAY</u>**

**TABLE OF CONTENTS**

|  | Page |
|---|---|

I.  THE ARBITRATION AGREEMENTS ARE VALID ............................................................... 1

    A.    Plaintiff Manifested Consent ................................................................................ 1

    B.    Plaintiff Had Ample Notice of Both Arbitration Provisions .............................. 2

    C.    The "Incorporation by Reference" Doctrine Does Not Apply ............................ 7

II.  THE ARBITRATION AGREEMENTS ARE NOT UNCONSCIONABLE ............................ 7

CONCLUSION ................................................................................................................................ 8

## **TABLE OF AUTHORITIES**

**Cases**                                                                                             **Pages(s)**

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells*,
  9 F.3d 1060 (2d Cir. 1993).................................................................................................1

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  191 F.3d 198 (2d Cir. 1999)................................................................................................8

*Gillman v. Chase Manhattan Bank, N.A.*,
  73 N.Y.2d 1 (1988) .............................................................................................................7

*Glover v. Bob's Disc. Furniture, LLC*,
  621 F. Supp. 3d 442 (S.D.N.Y. 2022).......................................................................1, 2, 3, 4

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2nd Cir. 2017)................................................................................................3

*Nat'l City Com. Cap. Co., LLC v. Becker Real Est. Servs., Inc.*,
  24 Misc.3d 912 (Sup. Ct. 2009)..........................................................................................2

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd*
  999 F.3d 828 (2d Cir. 2021)................................................................................................3

*Starke v. SquareTrade, Inc*.
  913 F.3d 279 (2d Cir. 2019)............................................................................................4, 5

*Thorne v. Square, Inc*
  No. 20-cv-5119, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022) ..........................................3

*VKK Corp. v. Nat'l Football League*,
  244 F.3d 114 (2d Cir. 2001)............................................................................................1, 2

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO COMPEL ARBITRATION AND STAY

Defendant BDF[1] respectfully submits this reply in support of its Motion to Compel Arbitration and Stay (the "Motion") and in response to the Opposition (the "Opposition" or "Opp.") served by Plaintiff. Each of the Opposition's arguments fails for the reasons set forth below.

**I.     THE ARBITRATION AGREEMENTS ARE VALID.**

    **A.     PLAINTIFF MANIFESTED CONSENT.**

Plaintiff begins by declaring that she did not manifest consent to arbitration. Opp. p. 4. That is plainly incorrect. She manifested consent by accepting the benefits of the transaction.

In fact, Plaintiff's counsel made this same argument in a prior case against BDF and it was squarely rejected. *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 448-450 (S.D.N.Y. 2022). As *Glover* explains, someone who receives a contract, makes no objections, and proceeds to benefit from the transaction, will be bound by an arbitration provision even though he or she did not sign or otherwise manifest consent. *Id.*; *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1064 (2d Cir. 1993); *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001) (A party ratifies a contract by "intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it.").

As in *Glover*, the Plaintiff here was given the opportunity to cancel her purchase after she received e-mail notice of the arbitration provisions. 1st Lotufo Dec.[2], ¶ 10, 11, 14, Ex. A, B.[3]

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.
[2] "1st Lotufo Dec." refers to the accompanying June 29, 2023 Declaration of Dean Lotufo served with Defendant's Motion. "2nd Lotufo Dec." refers to the accompanying August 16, 2023 Declaration of Dean Lotufo served with the instant Reply.
[3] References to exhibits refer to the attachments to the 1st Lotufo Dec.

She did not do so. *Id.*, ¶ 14. Instead, she freely accepted the benefits of the transaction consisting of furniture and accidental damage coverage. *Id.*; *Nat'l City Com. Cap. Co., LLC v. Becker Real Est. Servs., Inc.*, 24 Misc.3d 912 (Sup. Ct. 2009) ("Acceptance and retention of the goods constitutes ratification of the agreement between the parties.") She cannot unreservedly accept the benefits of the transaction and later argue that she is not subject to its terms.

The Opposition's attempt to distinguish *Glover* is unavailing. Opp., p. 7. True enough, the plaintiff in *Glover* ratified the agreements a second time by suing to enforce them, whereas the Plaintiff here made the tactical decision to withdraw all claims premised on the agreements in response to Defendant's Motion. *Id.,* at 1, n.1. The *Glover* court made it clear, however, that bringing a breach of contract claim only "<u>further</u> ratified" an agreement that the plaintiff had <u>already ratified</u> by accepting the benefits of the transaction. *Glover*, 621 F. Supp. 3d at 449 ("[plainitff's] failure to repudiate the contract constitutes ratification… Moreover, [plaintiff] further ratified the contract by bringing a claim for breach of the contract."). There is no doubt that *Glover* would have come out the same way even if the plaintiff had not asserted contract claims.

The Opposition's first argument fails accordingly.

### B.  Plaintiff Had Ample Notice Of Both Arbitration Provisions.

The Opposition next argues that Plaintiff did not receive adequate notice of the arbitration provisions. Opp. pp. 4-9. This is also incorrect. First, the BDF website put her on inquiry notice of the arbitration provision contained in the Goof Proof Contract. 1st Lotufo Dec., ¶ 8-9. Then, following her purchase, she was e-mailed a copy of the Goof Proof Contract. *Id.*, ¶ 10. In addition, she was e-mailed her Sales Receipt, which included an additional arbitration provision. *Id.*, ¶ 11. Accordingly, she received notice that her claims were subject to arbitration on three separate occasions. The Opposition offers no evidence to the contrary.

2

Instead, the Opposition argues that the agreements are unenforceable because they were not "reasonably conspicuous" as a matter of law. The cases cited in the Opposition do not remotely support Plaintiff's contention.

In *Thorne v. Square, Inc*., this Court <u>enforced</u> an on-line arbitration provision despite the fact that the consumer was not required to check a separate "I agree" box or made to scroll through all of the terms. No. 20-cv-5119, 2022 WL 542383, *8 (E.D.N.Y. Feb. 23, 2022). Contrary to what the Opposition suggests, *Thorne* teaches that "sign-in wrap" agreements <u>are</u> enforceable.

The same is true of *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 75 (2nd Cir. 2017), in which the Second Circuit <u>enforced</u> an arbitration provision where a user was <u>not</u> required to follow a link to the terms and conditions or check a separate "I agree" box.

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd*. has no bearing on this case. The question there was whether an enforceable agreement to arbitrate was formed by a printed flyer that contained no reference to arbitration, only a mention of website that included terms and conditions. 999 F.3d 828, 830 (2d Cir. 2021). The Second Circuit reached the uncontroversial conclusion that a printed ad cannot impose contractual terms on a consumer by merely referencing a website. *Id.* That holding has no relevance here.

There is, of course, one case that does squarely address whether the arbitration provision contained in BDF's sales receipts is sufficiently conspicuous as a matter of law: *Glover*. As the Southern District of New York explained,

> [the plaintiff] had adequate notice of the [BDF] arbitration clause. The first page of her receipt included a sentence that read: 'The information contained on the subsequent pages of this document is an integral part of the agreement between the buyer and the seller.' This was sufficient to alert [plaintiff] of the terms present on the reverse. [The plaintiff] then accepted the goods without protest…

3

> this case is therefore unlike the cases cited by [plaintiff]… In this case, [plaintiff] was amply made aware that the reverse side contained terms that might affect [plaintiff's] rights, and one of the bolded, underlined headings on the reverse side was 'Resolution of Disputes,' which referred to the arbitration procedure. Because [plaintiff] had adequate notice of the arbitration clause, [plaintiff's] failure to repudiate the contract constitutes acceptance of the arbitration clause.

621 F. Supp. 3d at 449; Ex. B.

While *Glover* involved an in-store purchase and this case involves an on-line purchase, the plaintiffs in both cases received their receipts <u>immediately following</u> their purchase in <u>precisely the same format</u>.[4] 1st Lotufo Dec., ¶ 11; Ex. B. As in *Glover*, the first page of Plaintiff's Sales Receipt states "The information contained on the subsequent pages of this document is an integral part of the agreement between the buyer and the seller." Ex. B. The last page contains a bold heading reading "**RESOLUTION OF DISPUTES**" followed by the arbitration provision. *Id*.

The Opposition suggests that a receipt e-mailed after an online transaction cannot form a binding agreement. Opp. p. 9. That overstates the holding of *Starke v. SquareTrade, Inc.*, which actually found that an <u>inconspicuous link hidden at the end of an e-mail</u> was insufficient notice to bind a consumer to an agreement. 913 F.3d 279, 284 (2d Cir. 2019) ("SquareTrade confirmation email did not make the Post-Sale T&C readily and obviously available, because it did not draw any attention to the inconspicuously placed Terms & Conditions hyperlink in small font at the very bottom of the email. Rather, a reasonable person in Starke's position would have thought that the body of the email constituted the contract itself. Given that the terms of the contract were

---

[4] The terms of the arbitration provision at issue in *Glover* were slightly different than the language at issue here, but the receipt was formatted in exactly the same way. Both provisions were equally conspicuous.

4

obscured and minimized, the district court held that Starke could not have evidenced a clear manifestation of assent.").

Here, in contrast, the Goof Proof Contract, including its arbitration provision, were presented pre-sale on the BDF website. 1st Lotufo Dec., ¶¶ 8-9. When Plaintiff added Goof Proof to her shopping cart, she was given a link to a summary of the plan. *Id*. That page included a prominent button reading "See Terms and Conditions" that led to an arbitration provision. *Id*.

**Bob's Goof Proof pricing**
(Amounts based on subtotal)

| Order Subtotal | Goof Proof Fee | | |
|---|---|---|---|
| $0 - $299.99 | $39.99 | $1500 - $1999.99 | $249.99 |
| $300 - $399.99 | $49.99 | $2000 - $2499.99 | $299.99 |
| $400 - $599.99 | $69.99 | $2500 - $2999.99 | $349.99 |
| $600 - $999.99 | $99.99 | $3000 - $4999.99 | $399.99 |
| $1000 - $1299.99 | $149.99 | $5000 - $20000 | $499.99 |
| $1300 - $1499.99 | $199.99 | | |

*All claims must be reported within 30 days of the incident. Some exclusions apply. See protection plan terms and conditions for details. A copy of the plan is available for review at a Bob's store. You'll receive a copy of your protection plan documents via the email address that you provided at the time of purchase. You may also view your documents online by visiting mybobs.com/goof-proof and clicking on "File A Goof Claim". If you have any questions, please contact Guardian online or at (800) 538-9500.

** Covered after the manufacturer's warranty has expired. Coverage for motors is limited to a single incident.

Protection plans provided by CNA Warranty Services, Inc. or one of its affiliates and administered by Guardian Protection Products Inc.

Hickory, NC | GuardianProducts.com | LC-GDBSTAINSBB 05/2022

See Terms & Conditions

*See* accompanying Second Declaration of Dean Lotufo at ¶ 5 ("2nd Lotufo Dec."); *see also* Ex. A. Accordingly, Plaintiff was on inquiry notice that her claims were subject to arbitration before she completed her purchase.

Those same terms & conditions were then e-mailed to Plaintiff after the transaction to provide Plaintiff with <u>additional</u> notice. 1st Lotufo Dec. ¶ 10, Ex. A. This short e-mail was titled "Your Protection Plan" and the body read as follows:

> This letter is a follow up to the protection plan purchase you made for your furniture related item(s). <u>Attached is a copy of the terms and conditions of your protection plan.</u> If you have any questions at this time regarding your protection plan, please contact customer service at the phone number shown on the attached plan documents or email us at gwarranty@guardianproducts.net.

> PLEASE NOTE – your cover letter may contain inconsistencies based on the timing of your registration and furniture delivery dates, however, your claim eligibility will be determined based on the actual dates and amounts from your original sales/delivery receipt(s) not from the information provided on your cover letter should it be different.

2nd Lotufo Dec at ¶ 6 (emphasis added).

On top of this, BDF sent another straightforward e-mail with Plaintiffs' Sales Receipt, which included another arbitration provision. *Id*., ¶ 11.

> Dear Valued Customer:
>
> Thank you for making my Bob's Discount Furniture part of your home. I know you will enjoy your new furniture for many years. Please find a copy of your sales order receipt attached.
>
> If you have any questions regarding your order please contact the store where you made your purchase. The store phone number can be located on the top of your sales order receipt.
>
> If you have any questions regarding your delivery don't hesitate to call my Customer Care Department at (860)474-1000, associates are available 8:00 AM to 10:00 PM EST Monday through Saturday and 10:30 AM to 7:00 PM EST Sunday.
>
> Thanks!
> BOB

*Id*. at 8 (emphasis added).

This case is nothing like *Starke*, where there was no on-line disclosure of an arbitration provision prior to purchase and the placement of the "hyperlink in the email makes it hard to escape the inference that SquareTrade hoped the reader's eye would be drawn elsewhere." *Starke*, 913 F.3d at 294. BDF did not try to hide the terms of sale. It clearly disclosed them to

6

Plaintiff both on-line and by repeated e-mails. 1st Lotufo Dec., ¶¶ 8-12, Ex. A, Ex. B; 2nd Lotufo Dec. ¶¶ 5-10.

In fact, unlike in *Starke*, Plaintiff did not submit a declaration denying that she received <u>actual notice</u> of the arbitration provision. She cannot make that averment after having made prior purchases from BDF that undoubtably put her on notice. 1st Lotufo Dec., ¶ 12, Ex. C, D.

Finally, contrary to what the Opposition wrongly states, the Sales Receipt does contain an express jury waiver. *Compare* Opp. p. 5 ("[N]othing about the 'sales order receipt' language indicated that she may be forfeiting her right to a trial by jury.") *with* Ex. B ("You agree to waive your right to have a judge or jury decide your claim.")

For all of the reasons explained above, Plaintiff has failed to show that the arbitration agreements were not "reasonably conspicuous" as a matter of law.

        **C.    THE "INCORPORATION BY REFERENCE" DOCTRINE DOES NOT APPLY.**

The Opposition also suggests that the Goof Proof Contract and Sales Receipt did not effectively "incorporate by reference" their arbitration provisions. Opp. p. 10. Incorporation by reference occurs when one writing adopts terms contained in another writing. Here, in contrast, the Good Proof Contract and Sales Receipt each contain their own arbitration provisions. Ex. A, B. Neither documents seeks to incorporate by reference any other document. Accordingly, the incorporation by reference doctrine has no application to this case.

**II.    THE ARBITRATION AGREEMENTS ARE NOT UNCONSCIONABLE.**

The Opposition correctly observes a plaintiff must show that an agreement to arbitrate is <u>both</u> procedurally and substantively unconscionable before New York law will invalidate it. Opp. p. 11 *citing Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). Plaintiff made neither showing.

7

Contrary to what the Opposition wrongly suggests, consumer contracts offered on a take-it-or-leave-it basis are not *per se* unconscionable. They are a fact of modern life and there is no practical way that they could be negotiated individually. Instead, the procedural unconscionability analysis requires, among other things, an assessment of the "size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability…." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11 (1988). The Opposition did not address any of these factors.

A contract is substantively unconscionable when the terms of the contract are unreasonably favorable to the party against whom unconscionability is claimed. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999). The Opposition does not identify **any** term in either the Goof Proof Contract or Sales Receipt that is unreasonably favorable to BDF. Having failed to identify a single substantively unconscionable term, much less one bearing on the parties' agreement to arbitrate, Plaintiff has not demonstrated the need for the evidentiary hearing she requests.

Finally, BDF agrees that the question of whether an agreement to arbitrate was formed should be resolved by this Court. It should find that agreements to arbitrate were formed that that Plaintiff must pursue her claims in arbitration on an individual basis.

## CONCLUSION

Defendant Bob's Discount Furniture, LLC respectfully requests that this Honorable Court enter an order compelling Plaintiff to arbitration her claims on an individual basis and staying this action pending the outcome of that arbitration.

Respectfully submitted,

**DEFENDANT BOB'S DISCOUNT FURNITURE, LLC,**

By its counsel,

*/s/ Duvol M. Thompson*
Duvol M. Thompson
HOLLAND & KNIGHT LLP
31 West 52nd Street
12th Floor
New York, NY 10019
*duvol.thompson@hklaw.com*
212-513-3200

Robert M. Shaw*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
*robert.shaw@hklaw.com*
617-203-2018

*Motion for admission *pro hac vice* forthcoming

DATED: August 16, 2023

## CERTIFICATE OF SERVICE

The undersigned certifies that today, the 16th day of August 2023, he caused a true copy of the foregoing to be served on counsel for the plaintiff by e-mail addressed as follows: *spencer@spencersheehan.com, thillebrand@spencersheehan.com*.

*/s/ Robert M Shaw*
Robert M. Shaw