UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BETTY BOLLING,
Individually and on behalf of
all others similarly situated,

       Plaintiff,

   -against-

BOB'S DISCOUNT FURNITURE, LLC,

       Defendant.
------------------------------------------------------------X

            **REPORT AND
            RECOMMENDATION**
           22-cv-06312 (LDH) (JMW)

**A P P E A R A N C E S:**

Theodore Hillebrand, Esq.
Spencer I. Sheehan, Esq.
**Sheehan & Associates**
60 Cuttermill Rd, Suite 412
Great Neck, NY 11021
*Attorneys for Plaintiff*

Duvol Maurice Thompson, Esq.
**Holland & Knight LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
*Attorney for Defendant*

**WICKS,** Magistrate Judge:

  Plaintiff Betty Bolling, commenced this suit against Defendant Bob's Discount Furniture,

LLC ("Bob's"), alleging a variety of claims against Bob's – ranging from violations of New

York General Business Law §§ 349 and 350, Magnusson Moss Warranty Act, 15 U.S.C. §§

2301, *et seq.*, and state consumer fraud acts, as well as breaches of warranties – all stemming

from the purchase of a sofa and the accompanying "Goof Proof" protection plan.  She alleges

that Bob's misled her and other similarly situated consumers into believing that the "Goof Proof"

purchased protection plan would cover accidental damage.  Before the Court is Defendant's

motion to compel arbitration and stay the case pending the outcome of arbitration (ECF No. 12). For the reasons that follow, the undersigned respectfully recommends that Defendant's motion be granted in its entirety.

## **RELEVANT BACKGROUND**

### A.  Defendant's "Goof Proof" Protection Plan

Plaintiff, a resident of New York, alleges that Defendant, a Massachusetts limited liability company with its principal place of business in Connecticut,[1] advertised its "Goof Proof" protection plan as a method of protecting customers' purchasers against harm.  (ECF No. 1 ¶¶ 2, 36-37.)  The Goof Proof plan is a service contract in which Defendant would repair, replace, or maintain the property for a specific duration of time "due to a defect in materials or workmanship or wear and tear."  (*Id.* ¶ 4.)  Thus, accidental damage would not be covered in this contract and the Goof Proof terms do not discuss whether customer misuse or accidental damage is covered.  (*Id.* ¶¶ 6, 9.)  Plaintiff contends that Goof Proof realistically does not protect the furniture purchased, given the lengthy list of exclusions.  (*Id.* ¶ 11.)  Unless customers can identify what specifically caused the damage or the exact date within a 30-day period when a stain or damage occurred, the claim is likely to be denied by Defendant.  (*Id.* ¶¶ 15, 19.)

### B.  Plaintiff's Claim under the "Goof Proof" Protection Plan

Plaintiff purchased a sofa from Bob's, along with the Goof Proof plan believing it would provide her with the coverage needed from accidental damage, regardless if it occurred at the hands of the Defendant or through her own fault.  (*Id.* ¶ 33.)  Plaintiff submitted a claim for her sofa which she claimed contained an accidental tear.  (*Id.* ¶ 27.)  However, Defendant denied the claim stating that the purchased plan covers "accidental rips, cuts and punctures" but does not

---

[1] The sole member of Defendant's limited liability company is BDF Acquisition Corp., a Delaware corporation with its principal place of business in Connecticut.  (ECF No. 1 ¶ 38.)

cover "seam separation" or "stress tears" and she would thus have to pay the expenses herself to get the sofa repaired.[2]  (*Id.* ¶ 28.)  Plaintiff alleges that the tear was caused by an accidental rip and was not due to a seam separation or stress tear in the normal usage of the sofa and should not have been denied on that basis.  (*Id.* ¶ 29.)

### C.  The Arbitration Clause and Class Action Waiver Provision at Issue

Defendant seeks to enforce the arbitration and class action waiver provisions sent to Plaintiff in various documents, while Plaintiff opposes the validity of these provisions.

Before completing a furniture purchase, consumers are presented with the option to include the Goof Proof contract.  And, prior to completing the Goof Proof add-on purchase, parties are permitted, but not required, review the terms and conditions in the Goof Proof contract.



(ECF No. 16 at 2) (highlighting and red outlining supplied).

The full terms and conditions include the following arbitration clause:

---

[2] The Goof Proof service contract language specifically states: "We will not pay for the following: Material and Workmanship Defects: Leather/vinyl cracking or peeling; stress tears; seam separation/slippage; loose threads; color loss, fading or discoloration; breakdown of assembled joints; manufacturing variations, including fabric/leather dye lot and wood finish variations; leather scars or finish defects."  (ECF No. 13-1 at 3.)

**ARBITRATION**: If We cannot resolve any disputes with You related to the Plan, including claims, **YOU AND WE AGREE TO RESOLVE THOSE DISPUTES THROUGH BINDING ARBITRATION OR SMALL CLAIMS COURT INSTEAD OF THROUGH COURTS OF GENERAL JURISDICTION. FURTHER, YOU AND WE AGREE TO WAIVE OUR RIGHTS TO A TRIAL BY JURY AND NOT TO PARTICIPATE IN ANY CLASS ARBITRATIONS OR CLASS ACTIONS.** This Plan is evidence of a transaction in interstate commerce and the Federal Arbitration Act applies to and governs the enforcement of any arbitration hereunder. The provisions of this Arbitration section shall survive the termination of this Plan. **YOU AND WE UNDERSTAND AND AGREE THAT, BECAUSE OF THIS PROVISION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS PROVIDED ABOVE OR TO HAVE A JURY TRIAL OR TO PARTICIPATE AS ANY MEMBER OF A CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM**.

(ECF No. 13-1 at 4.)

Parties are also given the opportunity to cancel the service contract and receive a full refund up to 30 days post-purchase. (ECF No. 13-1 at 4) ("If the Plan is cancelled: (a) within thirty (30) days of the receipt of this Plan, You shall receive a full refund of the price paid for the Plan, less the cost of any service, claim paid, or replacement received or pending."). In this case, Plaintiff did not cancel her service contract within the 30-day period.

In addition, once consumers complete their transaction, they are sent an e-mail containing the following clause regarding the resolution of dispute and waiver of class actions:

Any controversy or claim between you and Bob's arising out of, or relating to, this agreement or any products or services purchased from Bob's *shall* be resolved by arbitration administered by the American Arbitration Association pursuant to its Consumer Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. You agree to waive your right to have a judge or jury decide your claim. You and Bob's further agree to bring any claim on an individual basis only. Neither you nor Bob's will serve as a class representative, join as a class member, or otherwise participate as a plaintiff in any class, mass, consolidated, or private attorney general action or arbitration.

(ECF No. 13-2 at 4 (emphasis supplied).)

Notably here, Plaintiff made two prior purchases that contained these same arbitration and class action waiver provisions in the sales receipts. (*See* ECF No. 13-3 at 4; 13-4 at 3.)

4

## PROCEDURAL BACKGROUND

The case commenced on October 19, 2022, in which Plaintiff seeks $5 million including sales, statutory and punitive damages, and attorney's fees.  (*See generally id*.)

On January 27, 2023, Defendant filed a letter motion for a pre-motion conference on its anticipated motion to compel arbitration and motion to dismiss.  (ECF No. 8.)  Plaintiff opposed. (ECF No. 10.)  The Hon. LaShann DeArcy Hall held a pre-motion conference before the parties on April 4, 2023, setting a briefing schedule for the instant motion which was to be bundle filed by August 16, 2023.  (*See* Electronic Order dated Apr. 4, 2023.)  Parties timely submitted their respective papers.  (ECF Nos. 12-17.)  The present motion was referred to the undersigned on November 1, 2023.  (*See* Electronic Order dated Nov. 1, 2023.)

Defendant asserts four arguments: (1) Plaintiff should be compelled to arbitrate her claims which fall within the scope of the arbitration provisions; (2) Plaintiff accepted the benefits of the transaction and sought enforcement via this suit; (3) the arbitration provision in the contract can be enforced by Defendant, although it runs to Guardian Protection Products, Inc. ("Guardian"), the non-party that administers the Goof Proof service contracts; and (4) the class action waivers must be enforced whenever included in a valid arbitration provision.  (ECF No. 14.)

Plaintiff strenuously opposes, arguing first that the arbitration agreement is invalid because: (1) Defendant cannot show an agreement to arbitrate; (2) Plaintiff was not put on notice of the terms; and (3) the incorporation by reference doctrine would exclude the arbitration agreement.  (ECF No. 15.)  In addition, she argues that both substantive and procedural unconscionability are present here, which should bar mandated arbitration.  (*Id.*)

Defendant, however, responds that the arbitration agreement is valid since Plaintiff manifested consent and had ample notice of the arbitration provisions, and the incorporation reference doctrine does not apply.  (ECF No. 17.)  Further it argues that the agreement is not unconscionable.  (*Id.*)

## LEGAL STANDARD

Under the Section 2 of the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]"  9 U.S.C. § 2.  State contract law governs the inquiry into whether a valid arbitration agreement exists.  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

New York law applies to the facts at issue, which is not disputed by the parties. Indeed, both parties rely on New York case law and neither contests the applicability of New York law. (*See generally* ECF Nos. 14, 15, 17); *see Severstal Wheeling, Inc. v. WPN Corp.*, 809 F. Supp. 2d 245, 255-56 (S.D.N.Y. 2011) (holding that where all parties have relied on a certain state's law in their memoranda, they have implicitly consented to the application of that law which "is sufficient to establish choice of law") (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

Section 4 of the FAA provides in relevant part that:

> A party aggrieved by the alleged failure … of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

However, when motions to compel arbitration are sought, federal courts typically stay the proceedings in accordance with the FAA: "upon any issue referable to arbitration under an

agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.

It is well settled that the FAA is driven by "a liberal federal policy favoring arbitration agreements, and places arbitration agreements on the same footing as other contracts." *Meyer*, 868 F.3d at 73 (internal quotation marks and citations omitted). The Supreme Court has repeatedly described the FAA as the embodiment of a federal policy favoring arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (collecting cases). Indeed, Congress enacted the FAA to "overcome judicial resistance to arbitration" and "place[] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Nonetheless, parties may only be compelled to arbitrate if they have agreed to do so. *Meyer*, 868 F.3d at 73. First, the Court must determine whether a valid arbitration agreement exists between the parties. *Id*. Second, if the Court finds that a valid arbitration agreement exists between the parties, then the Court will consider whether the parties' dispute is within the scope of the arbitration agreement. *Id*. at 74.

Motions to compel arbitration under Section 4 of the FAA are analyzed under a similar standard as motions for summary judgment. *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir.2003). "Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). However, the FAA "establishes that, as a matter of federal law, any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

"Questions of arbitrability are generally reserved for judicial determination, including 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)).

## DISCUSSION

It is undisputed that Defendant's terms contain mandatory arbitration and class waiver provisions.  Thus, the issues before the Court are (1) whether the agreement to arbitrate was valid, including whether Plaintiff was put on notice of the arbitration provisions, whether there was a manifestation of mutual assent to form an agreement to arbitrate between the parties, and whether the incorporation by reference doctrine applies; and (2) whether the terms are unconscionable.  Each is considered below.

### A.  Validity of the Agreement to Arbitrate

#### a.  Whether Plaintiff Had Notice of the Arbitration Provisions

Plaintiff argues she had no notice of the terms, while Defendant contends that she had notice on three separate occasions through (1) the "terms and conditions" link before purchasing the Goof Proof plan; (2) an email of a copy of the entire Good Proof contract; and (3) an email of her sales receipt containing the arbitration provision.  (ECF No. 17 at 8.)  Prior transactions also indicate that Plaintiff had notice of these provisions or similar provisions when making purchases through Bob's.

The Second Circuit has made clear, that if the user "had actual knowledge of the contractual terms, the user will still be bound if (1) a reasonably prudent person would be on inquiry notice of the terms, and (2) the user unambiguously manifests assent through conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.*, No. 22-cv-557, 2023 U.S. App. LEXIS 29285, at *16 (2d Cir. Nov. 3, 2023). These inquiries must be analyzed through an objective, rather than subjective, lens. *Id.*

For web-based contracts, courts look to the following: (1) "whether the interface clearly warned the user that taking a specific action would constitute assent to certain terms"; (2) "whether notice of the contractual terms was presented to the consumer in a location on the interface and at time when the consumer would expect to receive such terms"; and (3) the "course of dealing between the parties, including whether the contract terms were conspicuously presented to the consumer at each use of the offeror's service and the consumer's conduct in response to the repeated presentation of conspicuous terms." *Id.* at *19-20.

A "reasonably prudent" user is someone who "is not a complete stranger to computers or smartphones, having some familiarity with how to navigate to a website or download an app." *Id.* at *16. That user "is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way." *Id*. at *17; *see also Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 449 (S.D.N.Y. 2022) (citing *Whitt v. Prosper Funding LLC,* No. 15-cv-136 (GHW), 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015)) ("A party is on inquiry notice if a 'reasonably prudent' party 'would have noticed…and reviewed the terms.'"). Generally, courts look to the totality of the circumstances to determine whether the notice of the terms are conspicuous or otherwise obstructed or cluttered including the language used for the terms and conditions, the lack of clutter on the interface, the notice on the interface itself, the spatial

9

proximity of the terms to the mechanisms for manifesting assent.  *Edmundson*, 2023 U.S. App. LEXIS 29285 at \*17, 25-26.  Nonetheless, there are "no particular features that must be present to satisfy the reasonably conspicuous standard."  *Id.* at \*26.

Here, Plaintiff had ample notice of the arbitration provisions at issue both before the Goof Proof purchase and after: the Goof Proof were provided to Plaintiff terms and conditions prior to purchasing and the sales receipt was presented after the purchase. (ECF No. 14 at 8-9.)

Before purchasing the service contract, Plaintiff was given the opportunity to look at what the Goof Proof contract would cover and would not cover.  Specifically, Plaintiff could have clicked on a hyperlink which would have led her to the arbitration clause and other conditions.  (ECF No. 14 at 9.)  Once purchased, she was emailed a copy of the Goof Proof contract.  (ECF No. 16 at 2.)  Finally, the emailed sales receipt also included language about the arbitration clause and class action waiver under a provision titled "Resolution of Disputes." (ECF No. 14 at 10.)  That receipt clearly and unambiguously states that she would be forfeiting her right to a jury trial.  (ECF No. 13-2 at 4) ("You agree to waive your right to have a judge or jury decide your claim."); *see Glover*, 621 F. Supp. 3d at 449 (stating that the notice of the arbitration clause on the sales receipt was "sufficient to alert the customer of the terms present on the reverse").

Plaintiff argues that the arbitration clause was not "reasonably conspicuous," and she did not manifest her intent to be bound.  (ECF No. 15 at 12.)  The terms, she says, were "buried" in the webpage in comparison to the other text on the page and had to be accessed via the hyperlink and the material terms regarding arbitration were not brought to the forefront for her to view. (*Id.* at 6.)  She argues that she was thus not put on "inquiry notice" and was definitely not put on actual notice given that she did not need to read the terms before purchasing.  (*Id*. at 9.)

In addition to the number of documents that included the arbitration and class action waiver provisions, the terms themselves were reasonably conspicuous.  Specifically, the notice to the terms and conditions presented before the purchase was not in smaller font and there is only one hyperlink to the terms and conditions to the Goof Proof contract.  *See Edmundson,* 2023 U.S. App. LEXIS 29285 at *21 (stating that Klarna's interface was uncluttered in that it only had one link to the terms and only one button to select confirm and continue); *cf. Soliman v. Subway Franchisee Advert. Fund Tr. Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) (finding that the terms were not conspicuous for a consumer because the notice of the terms was buried in fine print with other words and not boldened or in other font to set it apart from other terms); *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 237-238, 241 (2d Cir. 2016) (finding that there were several links in various sizes and colors which could not be a reasonable method of placing the consumer on notice); *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 292-94 (2d Cir. 2019) (finding that a receipt emailed after an online transaction did not constitute a binding agreement since the link was hidden at the end of an email and was not presented prior to the purchase or in other various forums).  The "Resolution of Disputes" clause in the sales receipt was also conspicuous because it was bolded and underlined.  (*See* ECF No. 13-2 at 4.)

Courts have held that "the presentation of [the terms of service] at . . . purchase or enrollment . . . indicates to the consumer that he or she is taking such goods or employing such services subject to additional terms and conditions that may one day affect him or her." *Edmundson*, 2023 U.S. App. LEXIS 29285 at *25 (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012)).  Here, Plaintiff arrived at the terms and conditions page for Goof Proof when she was at the purchase page and was prompted to the option of adding the Goof Proof service contract to her overall purchase.  Thus, "a reasonably prudent user would understand that

the terms presented on the interface govern the user's future relationship with [Defendant]." *Edmundson*, 2023 U.S. App. LEXIS 29285 at *24.

Further, Plaintiff argues that it would have cost Defendant nothing to provide the terms to her prior to her purchase. (ECF No. 15 at 14.) However, Plaintiff fails to realize that she *was* indeed provided these terms before making a purchase to the Goof Proof plan and had been presented with these terms on two prior occasions. The onus was on Plaintiff to review the terms and conditions before purchasing to ensure she agreed with them before completing the transaction.

The Plaintiff's authority does not stand for the proposition that similar agreements should be deemed invalid because the text is not conspicuous; in fact, these cases actually found that those agreements *were* enforceable. *See Thorne v. Square Inc.,* No. 20-cv-5199 (NGG) (TAM), 2022 U.S. Dist. LEXIS 31810, at *15 (E.D.N.Y. Feb. 23, 2022) (granting defendant's motion to compel arbitration and dismiss the complaint because the terms were presented in a clear and conspicuous manner; plaintiffs were on inquiry notice of the terms; and plaintiffs manifested their assent to those terms); *Meyer*, 868 F.3d at 75 (finding reasonable notice of the clause where the screen was uncluttered and offset with different colors and was temporally coupled so that the terms were connected to the action of creating an Uber account); *see also Soliman*, 999 F.3d at 835 (applying California law related to a print advertisement and finding that the link to the website was buried in fine print and there was no signal to the user that they would be agreeing to the hidden terms).

Additionally, courts have also found that "[a] prior course of dealing between the parties support[s] the conclusion that they had agreed to certain terms and conditions." *Starke*, 913 F.3d

at 296.  Here, Plaintiff had made two prior purchases in 2018 and 2020 and received the same sales receipt with an arbitration provision and class action waiver.  (ECF No. 14 at 15.)

For these reasons, the undersigned finds that the Plaintiff had adequate notice of the terms and the terms themselves were reasonably conspicuous.

### b.  Whether Plaintiff Manifested Assent to the Terms

Plaintiff argues that there was no meeting of the minds or manifestation of mutual assent in order to form a legally enforceable agreement.  (ECF No. 15 at 9.)  Plaintiff posits that this arbitration agreement is invalid because it did not require her to click on the hyperlink to the agreement to view its terms and affirmatively sign or agree to any of the terms.  (*Id.* at 4-5.)  Further Plaintiff states that, like other customers, she did not analyze the terms on the receipt after her purchase.  (*Id.* at 5.)  Simply e-mailing the terms to her did not signify her assent.  (*Id.*)

Defendant argues that despite Plaintiff not signing the agreement to arbitrate, there is still a contract.  It argues that she ratified the contract by accepting the benefits and remaining silent or otherwise acquiescing in the contract after she could have avoided it or acted upon it and acknowledged it.  (ECF No. 14 at 13.)  Specifically, she could have cancelled the purchase altogether and demanded a refund but she chose not to do so even after having full notice of the terms.  (ECF No. 9.)  She kept the sofa, including its damage, for the entire refundable period and did nothing with regard to cancelling the transaction.

New York law requires that parties mutually assent to the terms in order for a contract to be formed.  *See Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 427 (2d Cir. 2004) ("Mutual assent is essential to the formation of a contract and a party cannot be held to have contracted if there was no assent or acceptance."); *Cohen v. Cohen,* 2019 N.Y. Misc. LEXIS 1686, at *6 (Tompkins Cty. Sup. Ct. Feb. 7, 2019) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in

agreement with respect to all material terms."); *Campoverde v. Sony Pictures Entm't*, No. 01-cv-7775 (LAP), 2002 U.S. Dist. LEXIS 18347, at *16-17 (S.D.N.Y. Sept. 27, 2022) ("To form a contract under New York law … there must be an offer, acceptance, and consideration, in addition to a showing of a meeting of the minds, which demonstrates the parties' mutual assent and mutual intent to be bound.").

Manifestation of mutual assent is considered a "touchstone of contract" formation and applies with equal force to web-based contracts. *See Edmundson,* 2023 U.S. App. LEXIS 29285 at *15. "Acceptance need not be express, but where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound. *Id.* at *19 (citing *Schnabel*, 697 F.3d at 128). A user will be deemed to have manifested assent if the terms are located on an uncluttered interface and the user does not need to "scroll beyond what is immediately visible to find the terms." *Id.* at *19.

A strikingly similar case involving Bob's was recently decided by Judge Koeltl. *See Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442 (S.D.N.Y. 2022). The plaintiff in *Glover*, like Plaintiff here, bought a sofa and the Goof Proof plan from Bob's. *Id.* at 446-47. Plaintiff was given a physical receipt which included a similar "Resolution of Disputes" provision as the one at issue here. *Id.* at 447. Plaintiff sued defendant once it denied the claim regarding various issues with the furniture. *Id.* Defendant then moved to compel based on the provisions provided to plaintiff upon purchase.

The court in *Glover* found that there was still an agreement to arbitrate despite the fact that the customers had not signed the receipt. *Id.* at 449 ("A party may be bound by an

agreement to arbitrate even if the party did not sign it so long as it is evident that the parties intended to be bound by the contract.").

In addition, the court found that parties may ratify a contract if they "intentionally accept[] benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it" or by suing on the contract. *Id.* at 449 (internal citations omitted). The *Glover* court found that plaintiff had adequate notice of the arbitration clause from the receipt and ratified the contract by failing to repudiate and by suing under it. *Id.* at 449. The Court ultimately granted defendant's motion to compel arbitration. *Id.* at 450.

Here, Plaintiff had the opportunity to make a product defect claim for the seam separation under the product defect warranty but failed to do so. (ECF No. 14 at 7) (noting that the sales receipt stated "Call Bob's Customer Support Department at (860)-474-1000 to report a factory defect"). The Goof Proof contract only covered accidental damage, not product defects, such as the seam separation present here. Further, Plaintiff could not identify the cause of the seam separation which would have supported her theory that this should be covered under the Goof Proof contract. However, upon denial of her seam separation claim, she did nothing. Thus, Plaintiff ratified the contract when she continued to use the couch and failed to return it or otherwise submit a defect claim.

Moreover, a company does not need to "explicitly advise the user" that clicking through the transaction constitutes assent to its terms and conditions. *Edmundson*, 2023 U.S. App. LEXIS 29285 at *30; *see also Abuda v. Strongblock*, Nos. 22-CV-10869 (LTS) (BCM), 22-CV-7313 (LTS) (BCM), 2023 U.S. Dist. LEXIS 173038, at *15 (S.D.N.Y. Sept. 27, 2023) (noting that there is no "requirement that a separate checkbox signifying the customer's separate

agreement" be provided); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (discussing that the user was not required to explicitly assent to the contract terms but implicitly agreed to the terms and conditions by creating an Uber account); *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513 (SLT) (LB), 2017 U.S. Dist. LEXIS 133701, at *27 (E.D.N.Y. Aug. 18, 2017) (finding that plaintiff "was not required to click on the hyperlink to the Conditions of Use in order to be bound by the terms contained therein"). Relatedly, a contract need not be signed in order for there to be a meeting of the minds. *See Irving R. Boody & Co. v. Win Holdings Int'l., Inc.*, 213 F. Supp.2d 378, 381 (S.D.N.Y. 2002) ("It is well settled in New York..that contract formation is not dependent on a signature."); *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 631 (S.D.N.Y. 1985) ("A written contract need not be signed to be binding against a party, so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract."). Therefore, Plaintiff's contention that she did not have to formally sign a document or check a box is moot.

The Court does recognize, however, that some aspects of Defendant's terms and conditions pre-purchase could have been clearer. For instance, Defendant could have included a statement with the addition of the Goof Proof service contract that stated something to the effect of "[b]y purchasing the Goof Proof service contract, you agree to abide by the terms set forth in the previous hyperlink." *See Edmundson*, 2023 U.S. App. LEXIS 29285 at *29 (addressing deficiencies in the instructions to confirm agreement with the terms).

Despite the minor deficiency noted above, the Court finds that Plaintiff manifested her assent through her conduct involving the transaction because she was given the opportunity to read the terms and conditions via the hyperlink *before* purchasing and could have opted out of the transaction altogether. *Edmundson*, 2023 U.S. App. LEXIS 29285 at *28 ("Reasonable

internet users would understand that [completing the purchase] constitutes their confirmation that they agree to the payment terms.); *Starke,* 913 F.3d at 296-97 ("So long as the purchaser's attention is adequately directed to a conspicuous hyperlink that is clearly identified as containing contractual terms to which the customer manifests assent by completing the transaction or retaining the product or service, a hyperlink can be an effective device for specifying contract terms.").

### c. Whether the Incorporation by Reference Doctrine Applies

Plaintiff contends that the terms and conditions of the Goof Proof contract presented prior to purchase was insufficient to incorporate the arbitration agreement because the terms do not expressly identify the arbitration agreement or incorporate it by reference.  (ECF No. 15 at 15.) For instance, Defendant should have mentioned the arbitration agreement in the sales receipt or blatantly in the Goof Proof summary in order for it to be incorporated.  (*Id.*)

"Incorporation by reference arises when a party to an arbitration agreement . . . has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause."  *Bishop v. Smith Barney*, No. 97-cv-4807, 1998 U.S. Dist. LEXIS 1239, at *13 (S.D.N.Y. Feb. 4, 1998).

Plaintiff appears to be arguing that the doctrine excludes the arbitration provision in the sales receipt since the terms did not explicitly refer to the provision.  But the incorporation by reference doctrine does not apply since the Goof Proof contract and the sales receipt each had their own arbitration and class action waiver provisions and need not be incorporated into the other.  *See* Order at 5, *Wong v. Bob's Disc. Furniture, LLC,* No. 22-CV-04220 (DSF) (JEM) (C.D. Cal. Dec. 27, 2022), ECF No. 33 (finding that the incorporation by reference doctrine did not apply since the sales receipt contained the arbitration provision and was not incorporated by reference); Order at 2, *Potthoff v. Bob's Disc. Furniture, LLC*, No. 22-cv-1722 (GF) (N.D. Ill.

Aug. 19, 2022), ECF No. 29 (finding that the doctrine did not apply because the contract itself contained an arbitration provision and did not refer to a separate document).

Because the provisions are independently included in both the Goof Proof contract and the sales receipt, the incorporation by reference doctrine is not applicable.

### B. Unconscionability of the Arbitration Agreement

Plaintiff argues that the arbitration agreement was both procedurally and substantively unconscionable.  Specifically, Plaintiff argues that the terms were procedurally unconscionable when compared against a single individual and Defendant's role in the market.  (ECF No. 15 at 16-17.)  Further Plaintiff states that the agreement is a contract of adhesion that operates on a "take it or leave it" basis which essentially coerced Plaintiff to accept these terms and left her with no meaningful choice.  (*Id.*)

"A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made, namely, some showing of "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Kaufman v. Relx Inc.*, 180 N.Y.S.3d 148, 150 (App. Div. 1st Dep't 2022); *Matter of Conifer Realty LLC (Envirotech Servs., Inc.)*, 964 N.Y.S.2d 735, 739 (App. Div. 3d Dep't 2013) (same).

Procedural unconscionability looks to the "circumstances at the time an agreement was entered into," factoring in the following:

> the commercial setting, whether deceptive or high-pressured tactics were employed, whether a party had a reasonable opportunity to understand the terms of the contract, which party drafted the contract, whether fine print was used in an agreement as to material terms, whether there was an alternative supply for the goods or services in question, the experience and education of the party claiming unconscionability, whether there was disparity in the bargaining power, and whether a contract of adhesion is at issue.

*Kaufman*, 180 N.Y.S.3d at 150.

In contrast, "[s]ubstantive unconscionability appear[s] in the content of the contract per se and may include, by way of example, inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *Matter of Conifer Realty LLC*, 964 N.Y.S.2d at 739.

Courts have found that contracts proffered on a take or leave it basis, standing alone, are insufficient to render them invalid. *See Mumin v. Uber Techs., Inc.* 239 F. Supp.3d 507, 525 (E.D.N.Y. 2017) ("Even a form contract that is offered on a 'take it or leave it' basis, without a chance to opt out, may be valid."); *Carr v. Credit One Bank*, No. 15-cv-6663 (LAK), 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) (rejecting procedural unconscionability argument because the mere "fact that a Cardmember Agreement is a printed form and is offered on a take-it-or-leave-it basis" was "insufficient to render the contract unconscionable"); *Ragone v. Atlantic Video at Manhattan Center*, No. 07-cv-6084 (JGK), 2008 WL 4058480, at *7 (S.D.N.Y. Aug. 29, 2008) ("The fact that the agreement was offered on a take it or leave it basis, alone, is insufficient to support a finding that the plaintiff lacked a "meaningful choice" in signing the agreement.").

Plaintiff attempts to liken this to situations in which courts have found procedural unconscionability concerning big box stores and uneducated customers. However, nothing in the facts or this situation indicates that she was "uneducated" or "needy" and presented with no opportunity to change the terms as Plaintiff insists the Court find. (ECF No. 15 at 16.) Instead, Plaintiff's conduct demonstrates at least some control over the transaction at issue: (1) Plaintiff's prior purchases indicates that the terms were favorable to her in some sense since she made repeated purchases at the same store and (2) she was afforded the opportunity to cancel the transaction after 30 full days if she did not wish to arbitrate but she *chose* not to. The

circumstances of the purchase are also void of procedural unconscionability: the present transaction took place online, likely in the privacy of her home, where she was not subjected to a time limit or the presence of a Bob's employee pressuring her to follow through with the purchase.

And other courts in cases against Bob's have rejected arguments similar to those made by Plaintiff here. *See* Order at 6-8, *Wong v. Bob's Disc. Furniture, LLC,* No. 22-CV-04220 (DSF) (JEM) (C.D. Cal. Dec. 27, 2022), ECF No. 33 (finding that although plaintiff was not given the opportunity to negotiate or modify the terms, there was no element of surprise especially because the arbitration provision was on a single page in capitalized and boldened heading); Order at 2, *Potthoff v. Bob's Disc. Furniture, LLC*, No. 22-cv-1722 (GF) (N.D. Ill. Aug. 19, 2022), ECF No. 29 (finding that the provision was not buried in a maze of fine print because it was "set off by a blank line" and "ha[d] a descriptive introductory title ("RESOLUTION OF DISPUTES")," and was in full size font).

In addition, Plaintiff states that the terms and conditions contained over 8,000 words with only about 3% of the document being dedicated to the arbitration and class waiver provisions. (ECF No. 15 at 17.)  However, this very fact undermines her position that the contract was unconscionable:  the very arbitration clause at issue was concise, comprehensible, not unwieldy and complicated.  Indeed, Defendant's agreement did not contain any "hidden" or "fine print" terms.

Plaintiff requests an "evidentiary hearing" to determine whether the terms are substantively unconscionable.  However, there is no indication from the facts adduced by Plaintiff demonstrating that the terms were unfair in any manner or that an issue of fact exists.

Accordingly, the undersigned concludes that an evidentiary hearing is unnecessary under the circumstances.

For these reasons, the undersigned finds that the agreement to arbitrate is not unconscionable.

### C. Scope of the Parties' Dispute

Having found that there is a valid agreement to arbitrate the dispute between the parties. The undersigned must now determine whether the dispute is covered by the arbitration agreement.

The scope of an arbitration agreement is governed by federal substantive law. *Progressive Cas. Ins. Co. v. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993). "[A]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983).

As described above, the dispute involves Plaintiff's denied Goof Proof claim for the seam separation in her purchased sofa. Per the Goof Proof contract, parties are required to arbitrate all claims "related" to the Goof Proof contract. (ECF No. 13-1 at 4.) In addition, the sales receipt states that parties are to arbitrate "[a]ny controversy or claim…arising out of, or relating to, this agreement or any products or services purchased from Bob's." (ECF No. 13-2 at 4.) Thus, Plaintiff's dispute falls within the ambit of the arbitration provisions in both the Goof Proof terms and the sale receipt's terms.

## CONCLUSION

For the reasons set forth above, the Court recommends that Defendant's motion to compel arbitration and stay the proceedings (ECF No. 12) be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York.
        November 29, 2023

                                                RESPECTFULLY RECOMMENDED,


                                                /S/  *James M. Wicks*
                                                JAMES M. WICKS
                                                United States Magistrate Judge